Wheeler, O. J.
—The points of difference between the present and the’ case of Kimmell v. Wheeler (22 Tex., 77) are, the patent in the present case, and the éonfirmatory act of the 10th of January, 1860.
In Kimmell v. Wheeler, we decided that the act of the 21st of December, 1853, “to provide for the construction of the Mississippi and Pacific railroad,” withdrew the land embraced within the reservation from private or individual appropriation by a colonist or other certificate, and that a location made within the limits of the reservation during its continuance was void. Does a patent issued for lands within the reservation at that time stand upon any higher ground? It would seem, upon principle, that it does not, for the plain reason, that the officer had no authority to issue patents to lands thus reserved and set apart from the mass of the public lands, and the act of issuing the patent, being contrary to law, was void. It has accordingly been held, in numerous decisions of this and other courts, that a patent which has been issued contrary to law is void. (Mason v. Russell, 1 Tex., 721; The State v. Delesdenier, 7 Tex., 76; Stoddard v. Chambers, 2 How., 284; Mills v. Stoddard, 8 How., 345; Id., 223; 9 Cr., 99; 18 How., 87.) It is too firmly settled by the whole current of judicial decisions on the point to be now questioned, that the issu *428 ing of a patent is a ministerial act, and must be performed according- to law; if it is issued against law, it is void. Such is the character of the defendant’s title. His location was made upon land which had been reserved from location, and which was not liable to be thus appropriated; and this was the case when the patent was issued. It was therefore issued contrary to law, and is consequently void. It is an elementary principle, hot to be touched, that an act, in order to be valid, must be legal. An act which is done contrary to law must be held void.
But it is supposed that the confirmatory act of the 10th of January, 1860, “confirming certain patents,” &e., “in .the Mississippi and Pacific railroad reservation,” validates the defendant’s title by relation back to the issuance of the patent, and will thus enable it to override the plaintiff’s location, which was made subsequently to the removal of the reservation, and before the passage of the act of the 10th of January, 1860, to wit, “prior to the 1st of ¡November, 1859.”
That the plaintiff’s location was valid when made cannot be doubted, as there had been no legal appropriation of the land. The question then is, whether, after he had legally appropriated the land by his location, the act confirmatory of the defendant’s patent could have the effect to divest his right, and transfer it to the defendant. On principle and authority, it is clear that it could not. A legislative act which should operate backwards and divest preexisting rights would be a retroactive law within the meaning of the constitutional inhibition. (De Cordova v. The City of Galveston, 4 Tex., 470.) A locative certificate gives a right to land. (O. & W. Dig., Art. 2040;) [Paschal’s Dig., Art. 5303, Note 1149.—Rep.] It is property, and as such is within the protection of the constitutional guaranties. (Hamilton v. Avery, 20 Tex., 612; Howard v. Perry, 7 Tex., 259.) If, therefore, the act of the 10th of January, *-1860, were intended to operate a divestiture of the plaintiff’s *429 right, hy relation backwards, it could not be admitted to have that effect. But we do not suppose it was so intended. There is nothing in the act which requires us to entertain that supposition; and, unless such intention was manifest beyond a doubt, we cannot suppose the legislature intended to affect the "rights of third persons, or to erect itself into a judicial tribunal to decide the question of right between these parties. The respect which is due the legislative department of the Government forbids such a supposition. The fair interpretation of the act seems to be, that it was intended to validate the claims of those for whose benefit it was enacted, as between themselves and the government, and where two of them were in conflict, to enable either party to withdraw his location; but not to give precedence to their claims over the legally-acquired rights of others. Be this as it may, the valid, subsisting, previously-acquired rights of third persons were unaffected by the act. As between these parties, the defendant’s right had its inception with the passage of the act in question. His location and patent being void, there was nothing on which it could operate by relation back to any antecedent time. The plaintiff’s was prior in time and superior in right, and must therefore prevail. His was a valid appropriation of the land from the time of his location, and was title sufficient to maintain the action against one having no' prior equity. The court, therefore, rightly adjudged a recovery in favor of the plaintiff.
We are referred, for the appellant, to the case of Hart v. Gibbons, which is supposed to maintain the doctrine that the government retains the power of absolute disposition of land until the patent issues, although it has been located and surveyed by the holder of a valid certificate. There is no decision of this court which maintains such a doctrine. That case has been often cited as supporting the doctrine, but an examination of the case will show that that question was not involved in the decision. Any obser *430 vations to the effect that incipient titles are not within the constitutional guaranties for the protection of property, f could only apply to such incipient titles as existed at the { period of revolution, and which were not recognized by {■ the new government, and consequently were held to have no standing in the courts, as in the case of Trimble v. Smithers, 1 Tex., 790, or have reference to the power of the government to establish new tribunals of review to detect and defeat fraudulent and 'forged claims upon the government, as in Hosner v. De Young, 1 Tex., 769, and League v. De Young, 11 How., 203. Thus understood, the observations of the court in Hart v. Gibbons will not mislead.
There is no error in the judgment, and it is
Affirmed.