## MONROE CATTLE COMPANY *v.* BECKER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 87. Submitted December 9, 1892. — Decided January 3, 1893.

During the ninety days allowed by the statutes of Texas concerning the purchase of school lands to a purchaser to make his first payment, (Laws of 1879, special session, p. 23, Laws of 1881, p, 119,) it is not competent for the surveyor to permit a person who had filed an application for a designated tract to treat the application as withdrawn and abandoned, and to make another application for the same tract in the name of a different person.

During that period of ninety days the land is in the position of reserved lands under railroad grant acts, to which it is well settled that the grant does not attach if the land is in any way segregated from the public lands.

The issue of a patent of public land to a person who is not equitably entitled to it does not preclude the owner of the equitable title from enforcing it in a court of equity against claimants under the patent.

Where the defendant in a suit in equity answers under oath denying charges of fraud, and no other evidence is offered, the charges are not sustained.

Charges of fraud made upon information and belief and not sustained by proof must be treated as not sustained.

Under the laws of Texas regulating the sale of the school lands, a purchaser who makes the first payment called for, who executes the obliga-

tions for subsequent payments as called for, and complies with those obligations as they mature, is protected against forfeiture.

The act of the legislature of Texas of April 14, 1883, concerning purchases of school lands, had no effect upon the vested rights of the plaintiff in this case.

It is bad pleading to describe a party by the initials only of his Christian name, but, when no advantage is taken of the defect in the court below, it will not be considered here.

THIS was a bill in equity to enjoin an action at law for the recovery of the possession of eleven sections of school lands in Shackleford County, Texas, and for the cancellation and annulment of certain patents for the same issued to the defendant Becker.

By an act of the legislature of Texas of July 8, 1879, Laws, 1879, Special Session, p. 23, as amended by a subsequent act of April 6, 1881, Gen. Laws, 1881, p. 119, provision was made for the sale of lands set apart for the benefit of the school fund, and for a method of bringing such lands into the market. This method is described in sections 6, 7, and 8 of the amended act, and sections 9, 10, and 15 of the original act, and is substantially as follows:

1. The purchaser applies to the surveyor of the county in which the land is situated, describing the land he proposes to purchase, which must not exceed seven sections, and pays the surveyor one dollar.

2. The surveyor records the application in a book kept for the purpose, and endorses such application, "recorded," giving the date, page and volume of the record, signs his name thereto, and delivers the application to the proposed purchaser.

3. The purchaser immediately forwards the application to the State Treasurer, together with one-twentieth of the appraised value of the land.

4. The treasurer enters a credit in his books for the amount received, giving a description of the land, and then issues his receipt for the money, and forwards it, with the application, to the Commissioner of the General Land Office.

5. The Commissioner of the General Land Office files the application and receipt in his office, and issues his own receipt

in lieu thereof, setting forth the amount paid to the treasurer and the quantity and valuation of the land applied for.

6. This certificate or receipt authorizes the surveyor to survey the land embraced in the original application.

7. The surveyor is then required to enter the same on his books as sold, and is forbidden to entertain another application for such land until notified of the forfeiture.

8. The applicant is required to make his first payment of one-twentieth, or the whole, as the case may be, of the value of the land, and present the receipt of the Commissioner of the General Land Office to the surveyor within nintey days from the date of the record of his application, and, if he fail to do this, the land is again treated as for sale, and the surveyor is authorized to receive applications for its purchase.

9. No person can renew his file, nor file on the same land more than once in twelve months, nor can he renew his file in the name of any other person. All applications for the purchase of lands are required to be made in the real name of the person intending to be the actual purchaser thereof.

10. Upon the receipt of the application by the surveyor, the purchaser is required to execute his promissory note payable to the governor, for the balance of the appraised value of the land, which note is forwarded to the Commissioner of the General Land Office and registered in a book, and then delivered to the treasurer of the State to be filed in his office.

Under the provisions of these acts no one person could purchase more than seven sections of land.

On November 25, 1882, one J. A. Rhomberg, (whose Christian name does not appear,) a resident of Iowa, but engaged in the construction and operation of a railroad in Texas, made application for the purchase of seven sections of the land in question on behalf of Maggie L. Rhomberg, and also made application for the remaining four sections on behalf of one Frank Robinson, and filed the same with the surveyor of the county pursuant to these acts. The surveyor received and recorded the applications, endorsed them as recorded, and returned them duly endorsed to Rhomberg, who was acting as agent of both of these applicants.

Prior to this time, however, and as early as February 28 of the same year, Rhomberg had made application for the same land in the name of different persons; had allowed these applications to lapse by the non-payment of the twentieth of their value within ninety days; and on the 29th and 30th of May had made other applications in the name of other persons, and had also allowed these to lapse by non-payment; and, again, on the 28th of August had made other applications in still other names, and in this way had kept the lands out of the market, until November 25, when he made the final applications above stated.

Before any further action was taken upon the last applications, and on January 2, 1883, one F. B. Jacobs, and on January 8 one Malinda Fisher, filed their applications with the surveyor for the purchase of the same lands. The surveyor recorded these applications, endorsed upon them a memorandum of such record, and returned them duly endorsed to the applicant.

On January 9 these applications of Jacobs were delivered to the State Treasurer and first payments were made on each of the sections applied for in his name. The applications of Malinda Fisher were also delivered to the State Treasurer, the date of which does not exactly appear, but the first payments were also made upon these applications before January 18. The treasurer received the applications and first payments of Jacobs and Fisher, made the proper entries in his books, issued his receipts for the money, and forwarded the receipts and applications to the Commissioner of the General Land Office. The Commissioner received and filed the applications and receipts, made the proper entries upon his books, and delivered his certificates in lieu of said receipts, all within less than ninety days from the original applications of November 25.

On January 18, a few days after the applications of Jacobs and Fisher, but less than ninety days after his last application of November 25, Rhomberg presented his applications duly endorsed to the State Treasurer, and tendered to him the first payments required by the act to be made upon each of the

eleven sections. The treasurer refused to receive such applications, or to accept the money, giving as his reason for such refusal that previous payments had been made upon these sections in the names of Jacobs and Fisher.

Rhomberg did not abandon these applications, but continued to press them and made repeated tenders to the State Treasurer, who, after several refusals, finally, on February 17, 1885, received the applications, accepted the first payments, made all the entries required by law regarding the same, issued his receipts for the payments, and forwarded the applications with the receipts to the Commissioner of the General Land Office. The Commissioner of the General Land Office ruled at first that first payments could not be received from two different applicants for the same sections, but finally withdrew this ruling and accepted the tender made by Rhomberg on February 17, 1885.

The title of Maggie L. Rhomberg and Frank Robinson became subsequently vested by intermediate conveyances in the defendant Becker, who, in May and June, 1886, made full and final payments to the State Treasurer of the purchase money, and letters patent were subsequently, and in the years 1886 and 1887, issued to him by the proper officers of the State of Texas for the whole eleven sections.

On March 12, 1883, Jacobs and Fisher conveyed the sections for which they had applied to the Monroe Cattle Company, which enclosed the land in controversy in its pastures, used and occupied the same and paid taxes thereon, but made no further effort to perfect its claim to the land, nor made any further payments of purchase money, either of principal or of interest, although, under the acts of 1878 and 1881, payments of interest were required to be made on or before the first day of March of each year upon all purchases of school lands, the appraised value of which had not been fully paid.

On February 14, 1887, the defendant Becker began an action of ejectment against the Monroe Cattle Company, and on February 1, 1888, the latter filed this bill to restrain Becker from further prosecuting his action at law, to remove the cloud upon its title to the land, and for the cancellation of

the patents granted to the defendant.     Upon a hearing on the pleadings and proofs, the court entered a decree dismissing the bill, and the plaintiff appealed to this court.

*Mr. A. H. Garland* and *Mr. H. J. May* for appellant.

*Mr. William D. Williams* for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This case involves the construction of the statutes of Texas with regard to the purchase of school lands, and depends upon the question whether, during the ninety days allowed to the proposed purchaser to make his first payment, it is competent for the surveyor to receive another application for the same land, or rather to permit a person, who had theretofore filed applications for two parties, to treat such applications as withdrawn and abandoned, and to make other applications in the name of different persons within the ninety days.

No one can examine critically the provisions of the statutes in question without noticing the solicitude of the legislature to prevent a monopoly of these lands by capitalists, or their withdrawal from the market by fictitious applications.     To secure a measurably equal allotment to each purchaser it was provided:

1. That no one should purchase more than three sections within five miles of the centre of any county or upon any water front, nor more than seven sections in any case.

2. That he should make his first payment within ninety days of his application.

3. That applications should be made in the real name of the actual purchaser.

4. That no one should renew his application nor file on the same land more than once in twelve months.

5. That no one should renew his file in the name of another.

In this case there were circumstances calculated to arouse suspicion in the conduct of both parties.     Upon the one hand,

Rhomberg made application on February 28, 1882, for the purchase of these eleven sections in the names of F. Becker, S. L. Rhomberg and Conrad Becker. These applications were suffered to lapse, and on the ninetieth day thereafter, namely, May 29, he made application for seven sections of the same lands in the name of J. M. Beechem, and on the following day for four sections in the name of M. B. Thompson. These applications were also suffered to lapse, and ninety-two days thereafter, namely, August 28, he applied for the same sections, except section 66, in the name of Margaretta Rhomberg and F. M. Robinson. He also seems to have intended that these should lapse, but as the ninetieth day, November 26, fell on Sunday, he wrote his attorneys on the 22d : "The old file expires on Sunday next. You will, therefore, probably have to refile on Saturday." A new application was, therefore, made on Saturday, November 25, in the name of Maggie L. Rhomberg and Frank Robinson. In this connection, the bill charged that Rhomberg made these applications in the names of other persons, who did not intend to be actual purchasers, for his own use and benefit, in order to acquire more than he was permitted to purchase directly from the State; that he further determined, in violation of the provision against renewing files in the names of other persons, to take advantage of the ninety-day limit, to allow the applications to be forfeited, and to make new applications in the names of other persons, not intending to be actual purchasers, and thus to hold the lands for a longer period than was permitted by the law; and, for the time being, to avoid the payment of any part of the purchase money and of the taxes, which would be assessed after the first payments had been made.

An answer under oath being required, the defendant denied the fraudulent purposes and designs charged against Rhomberg in the bill, and, in his testimony, Rhomberg swore that Margaretta and Maggie L. Rhomberg were different persons, as were also F. M. Robinson and Frank Robinson, and that they were each of them *bona fide* living persons, three of them living in Iowa, and one in Chicago; that Margaretta Rhomberg was his sister-in-law; that he was only distantly related

to the husband of Maggie L. Rhomberg, and that he was not related to either of the Robinsons; that he was not interested in any of the purchases himself; that he considered investments in Texas school lands good, and made his views known to many of his relatives and friends, and advised them to buy; that, as he was making his headquarters in Texas, many of them confided their interests to him; that he looked after them without demanding or expecting any pay for his services; and that the persons for whom he acted furnished the money to pay for the lands. He admitted making several applications to purchase the lands in question, and that these were abandoned without making the first payments; that the different applications were not renewals, but were for different persons; and that they were not intended to keep other persons from purchasing the lands. In short, that the applications were made *bona fide* for the benefit of the applicants, and that he had no personal interest in any of them. As there was no testimony contradictory of this, Rhomberg being the only witness examined on the subject the charges of fraud must be regarded as not sustained, if, indeed, the answer be not sufficient for that purpose without other testimony, *Hughes* v. *Blake,* 6 Wheat. 453; *Vigel* v. *Hopp,* 104 U. S. 441; *Beals* v. *Illinois, Missouri & Texas Railroad,* 133 U. S. 290.

Upon the other hand, the answer charges that one H. C. Jacobs was county surveyor, and J. L. Fisher was county judge of Shackleford County; that they were partners as real estate agents, transacting business under the name of Jacobs & Fisher; that the F. B. Jacobs, who made application in January, was a brother of H. C. Jacobs, and postmaster at Albany, the county seat of Shackleford County, and that Malinda Fisher, who applied for the remainder of the lands, was the wife of one John A. Fisher, deputy surveyor of the county, and brother of the other member of the firm of Jacobs & Fisher; that they entered into a conspiracy to levy a contribution upon all the purchasers of school lands in the county, and to control the same for their own benefit; that the firm of Jacobs & Fisher wrote letters to Rhomberg soliciting his business, promising to sell his lands at an advance,

and offered to make files of applications, promising special favors and attention to all who should employ them. It seems that Rhomberg did employ them in this connection, and had some correspondence with them. As these charges were made upon information and belief only, and as there is no evidence to support them, except the similarity of names, they must also be treated as not sustained.

I. The case resolves itself, then, into the simple question whether the surveyor was authorized to receive the applications of November 25, and whether the plaintiff is in a position to take advantage of his failure of jurisdiction in this particular. The language of the act is somewhat ambiguous, but the intent of the legislature that no application shall be entertained within the ninety days is entirely clear. It provides that the State Treasurer "shall then issue his receipt for said amount and forward it, with the above named application, to the Commissioner of the General Land Office, who shall file said application and receipt in his office, and issue his receipt in lieu thereof, . . . which certificate shall authorize the . . . surveyor to survey the land . . . and enter the same on his books as sold, and *shall not entertain another application* to purchase said land until notified of the forfeiture as hereinafter specified." Grammatically, the words "shall not entertain" refer to the Commissioner of the Land Office; but the proviso that "should the applicant fail to make his first payment . . . and present the certificate of the Commissioner of the General Land Office to the surveyor or his deputy within ninety days from the date of the record of his application, then and in that case the said lands shall be again for sale, and the surveyor shall be authorized to receive applications for the same," indicate that the words, "shall not entertain another application," refer to the surveyor and not to the commissioner. As more than ninety days had elapsed from May 29 and 30, the applications of August 28 are admitted to have been regular, and no other application could have been lawfully entertained within ninety days thereafter. As the ninetieth day fell on Sunday, the lands were not open to another application until Monday, the general rule being that,

when an act is to be performed within a certain number of days, and the last day falls on Sunday, the person charged with the performance of the act has the following day to comply with his obligation. Endlich on Statutes, § 393; *Salter* v. *Burt*, 20 Wend. 205; *Hammond* v. *American Life Ins. Co.*, 10 Gray, 306. The defendant claims that, while the act prohibited the entertaining of a second application in less than ninety days from the prior application, Rhomberg in fact had the right to withdraw and abandon the application and make another at any time within the ninety days. As no record exists of its abandonment, and no allusion is made to it in Rhomberg's letter of November 22, such abandonment can only be presumed from the fact that the new application was made November 25. There is nothing, however, to distinguish this from the prior applications in that particular. A construction of the act, too, which would permit such an abandonment would defeat the very object of the legislature, which was to fix a time within which no other application should be entertained, so that parties desiring to purchase the land would be apprised of the day when it would be open to an application. Such persons, however, could never know when an application would be abandoned, and such proceedings would permit an applicant, by a simple change of name of the person he represents, to keep the lands out of the market for an indefinite period. It is true that in *Martin* v. *Brown*, 62 Texas, 467, it was held that a fictitious application to purchase would not have the effect of preventing another person from applying before the expiration of the ninety days, but it certainly does not lie in the mouth of the defendant to claim that Rhomberg's first application was fictitious, since his whole case depends upon the propriety and legality of his action. In *Martin* v. *Brown* the demurrer admitted that the first application was fictitious and made by an agent for his own benefit, for the purpose of withholding the lands from the market. In this case the defendant claims, and proves by the testimony of Rhomberg, that the application was made by him in good faith for the benefit of the applicants, and not for his own.

During the ninety days allowed by law for the first payment

the land is in the position of reserved lands under railroad grant acts. The grant does not attach to them, if, at the time, they are preëmpted or otherwise segregated from the public lands. This principle is established by a large number of cases in this court. *Wilcox* v. *Jackson,* 13 Pet. 498; *Leavenworth, Lawrence &c. Railroad* v. *United States,* 92 U. S. 733; *Kansas Pacific Railway* v. *Dunmeyer,* 113 U. S. 629; *Hastings & Dakota Railroad* v. *Whitney,* 132 U. S. 357; *Bardon* v. *Northern Pacific Railroad,* 145 U. S. 535; *United States* v. *Southern Pacific Railroad,* 146 U. S. 570.

Defendant's position that the subsequent issuing of a patent put an end to the equitable rights of the appellant, cannot be sustained either under the decisions of this court or that of the Supreme Court of Texas. In the case of *Garland* v. *Wynn,* 20 How. 6, 8, the general rule was stated to be "that where several parties set up conflicting claims to property, with which a special tribunal may deal, as between one party and the government, regardless of the rights of others, the latter may come into the ordinary courts of justice and litigate their conflicting claims." To the same effect are *Cunningham* v. *Ashley,* 14 How. 377; *Lytle* v. *Arkansas,* 22 How. 193, 203; *Berthold* v. *McDonald,* 22 How. 334; *Lindsey* v. *Hawes,* 2 Black, 554; *Shepley* v. *Cowan,* 91 U. S. 330; *Bohall* v. *Dilla,* 114 U. S. 47; *Sturr* v. *Beck,* 133 U. S. 541, 550. In the case of *Stark* v. *Starrs,* 6 Wall. 402, 419, these cases are said to be "only applications of the well-established doctrine, that where one party has acquired the legal title to property to which another has a better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title." And in *Silver* v. *Ladd,* 7 Wall. 219, it was held that the proper relief was not the annulment and cancellation of the patent wrongfully issued, but was one founded upon the theory that the title which had passed from the United States to the defendant enured in equity to the benefit of the plaintiff, and that the decree should compel him to convey to the plaintiff, or to have such conveyance made in his name by a commissioner appointed by the court for that purpose. See also *Johnson* v. *Towsley,* 13 Wall. 72. It seems

that this is also the law of Texas. *Todd* v. *Fisher*, 26 Texas, 239; *Mitchell* v. *Bass*, 26 Texas, 376; *League* v. *Rogan*, 59 Texas, 427; *Sherwood* v. *Flemming*, 25 Texas, 408, 427; *Wright* v. *Hawkins*, 28 Texas, 452.

II. It is no defence that plaintiff has not complied with the law as to making the final payments. It appears that Jacobs and Fisher executed their obligations, as required by the act, for the balance of the appraised value, and that such obligations as have matured have been discharged and paid off, as well as the matured interest thereon. In any event, the defendant is in no position to claim a forfeiture on this ground. *Canales* v. *Perez*, 65 Texas, 291; *S. C.* 69 Texas, 676.

III. The act of the legislature of Texas, approved April 14, 1883, for the appointment of a land board to investigate all purchases of state school lands held under the acts of 1879 and 1881, cuts no figure in this case. Such an act could operate only as between the State and the purchaser. It would be beyond the competency of the legislature to affect the vested rights of the plaintiff as between him and the defendant by the passage of the act in question.

IV. Section 66 was not included in the applications of August 28, but was included in one of those of November 25, and, therefore, as to this section the defendant has shown the better right.

V. Defendant was impleaded by the name of "A. W. Becker." Initials are no legal part of a name, the authorities holding the full Christian name to be essential. *Wilson* v. *Shannon*, 6 Arkansas, 196; *Norris* v. *Graves*, 4 Strob. (Law,) 32; *Seely* v. *Boon*, Coxe, N. J. (1 N. J. Law,) 138; *Chappell* v. *Proctor*, Harp. S. C. (Law,) 49; *Kinnersley* v. *Knott*, 7 C. B. 980; *Turner* v. *Fitt*, 3 C. B. 701; *Oakley* v. *Pegler*, 46 N. W. Rep. 920; *Knox* v. *Starks*, 4 Minnesota, 20; *Kenyon* v. *Semon*, 45 N. W. Rep. 10; *Beggs* v. *Wellman*, 82 Alabama, 391; *Nash* v. *Collier*, 5 Dowl. & L. 341; *Fewlass* v. *Abbott*, 28 Michigan, 270. This loose method of pleading is not one to be commended, but as no advantage was taken of it in the court below, it will not be considered here.

The decree of the Circuit Court, except as to section 66, is, therefore,

*Reversed, and the case remanded for further proceedings in conformity with this opinion.*