[Civil No. 663.    Filed March 15, 1899.]

[56 Pac. 741.]

B. F. THOMPSON, Plaintiff and Appellant, v. D. M. FERRY et al., Defendants and Appellees.

1. TENANCY IN COMMON—CONVEYANCE OF WHOLE ESTATE BY ONE CO-
   TENANT—ENTRY UNDER DEED CLAIMING WHOLE—COLOR OF TITLE—
   ADVERSE POSSESSION—STATUTE OF LIMITATIONS.—A conveyance by

one cotenant, purporting to convey an estate in severalty, consti-
tutes color of title, and entry, under the deed, claiming an in-
terest coextensive with that with which the deed purports to deal,
is an entry under color of title. The cotenants are therefore bound
to take notice of the deed and of the entry made under it, and
to take such steps as may be required to enforce a recognition of
their rights. Should they fail to do so within the time prescribed
by the statute of limitations, their rights will be no longer sus-
ceptible of enforcement, and their interests, by operation of that
statute, will vest in the party in possession under the deed.

**2.** SAME—SAME—SAME—SAME—SAME—REV. STATS. ARIZ. 1887, PAR.
2299, CITED.—Where a patentee of mining ground, whose posses-
sion, under color of title, has ever been adverse to his cotenant,
sells and conveys the same, and grantees remain in the open, noto-
rious, exclusive, peaceable, and adverse possession thereof for five
years prior to the commencement of a suit in equity, by said
cotenant, to have the grantees declared trustees for his interest
therein and that they be decreed to convey it, is barred by the
statute of limitations, *supra.*

**3.** SAME—SAME—SAME—SAME—SAME—LACHES.—In 1883, Collins was
cotenant in the Poland Mine. He mortgaged his interest. When
the mortgage became due it was foreclosed. The cotenants were
made parties, not as cotenants, but it was alleged that they claimed
some interest subordinate to plaintiff, which allegation was found
true by the decree. All were served and defaulted, and the mine
was bought in by the mortgagor under the foreclosure sale. After
his death, his administrator conveyed the mine to Dickey, who
went into possession, relocated the claims, secured patents thereto,
and conveyed them by divers mesne conveyances to defendants.
After defendants and their grantors had been in possession for
nearly ten years, paying taxes, and expending over thirty thousand
dollars in development work, of all of which plaintiff, one of the
Collins cotenants, was aware, he brought suit to enforce his interest
as such cotenant. Under the equitable doctrine of laches, plaintiff
is estopped from now asserting that he is a cotenant, and that
defendants are trustees of the title for his use.

AFFIRMED, 180 U. S. 484; 45 L. Ed. 633.

APPEAL from a judgment of the District Court of the
Fourth Judicial District in and for the County of Yavapai.
J. J. Hawkins, Judge. Affirmed.

Statement of facts:—

On the twenty-fifth day of October, 1883, M. E. Collins was
the owner of an undivided one-half interest in the Poland min-
ing claim and an undivided one-half interest in the Hamilton

mining claim, both situated in the Big Bug Mining District, Yavapai County, Arizona. On that day he executed a mortgage to John M. Roberts to secure a debt to Roberts. At that time Charles C. Lane and John Howell were the owners of the other half interest, each owning an undivided one fourth. On the 14th of November, 1883, Lane conveyed by deed his one-fourth interest in the two claims to Collins, and on the same date Collins conveyed that undivided one fourth to Robert Scofield. On November 16, 1883, John Howell conveyed his undivided one-fourth interest to M. E. Collins, and on August 16, 1884, Collins conveyed an undivided one-fourth interest to B. F. Thompson, appellant herein. On August 21, 1886, John Roberts, mortgagee, brought suit in the district court of the fourth judicial district, in and for Yavapai County, against M. E. Collins, for the collection of the debt and a foreclosure of the mortgage. Robert Scofield and B. F. Thompson were made parties defendant. The allegation in the complaint as to defendants Scofield and Thompson was "that they claimed some interest, by purchase or otherwise, in and to said mortgaged premises; that whatever of interest or claim they, or either of them, may have in or to said mortgaged premises was acquired by them, and each of them, after the making and recording of said mortgage as aforesaid, and is subsequent and subject thereto." The prayer of the complaint with reference to those two defendants was, that the interest or claim of each of them to said mortgaged premises be decreed subject to said mortgage, and that said defendants, and each of them, and all persons claiming under them, or either of them, be barred and foreclosed of all right or claim of equity of redemption. The record fails to show the nature of the service of summons upon the defendants Scofield and Thompson, but the unchallenged statement in the brief is that Scofield was personally served with summons and complaint, and Thompson by publication, and that copies of each were mailed to him. The judgment recites that it appeared to the court that the defendants, M. E. Collins, Robert Scofield, and B. F. Thompson, and each of them, were regularly served with summons, and that they, and each of them, had failed to appear, but made default, and that the default of said defendants, and each of them, had been regularly entered. Said judgment was rendered on the fifteenth day of December,

1886, and after adjudging in favor of plaintiff Roberts, and against the defendant Collins, as to the debt, it decreed that, all and singular, the mortgaged premises mentioned in plaintiff's complaint be sold at public auction by the sheriff of Yavapai County, after giving the proper notice, and that the sheriff, after the time allowed by law for redemption has expired, execute a deed to the purchaser or purchasers of the mortgaged premises on the said sale. It further decreed ''that the defendants, Collins, Scofield, and Thompson, and each of them, and all persons claiming or to claim from or under them, or either of them, and all persons having liens subsequent to the said mortgage, by judgment or decree, upon the lands described in said mortgage, be forever barred and foreclosed of and from all equity of redemption and claim in, of, and to said mortgaged premises, and every part thereof, from and after the delivery of the sheriff's deed.'' The premises described in the decree were the Poland and Hamilton mining claims, by metes and bounds. The mortgagee, John M. Roberts, became the purchaser at the sheriff's sale on the 17th of March, 1887, and received a certificate of sale describing the Poland and Hamilton mining claims by metes and bounds, and on the thirtieth day of September, 1887, received a sheriff's deed therefor. The Poland and Hamilton mining claims at that time were unpatented mining locations. On the 20th of July, 1891, James R. Lowry, as administrator of the estate of John M. Roberts, deceased, conveyed all the right, title, and interest which said John M. Roberts had at the time of his death, and all right, title, and interest which his estate may have acquired since his death, in and to the Poland and Hamilton mining claims, to E. M. Dickey. Thereafter, on December 14, 1891, Dickey made a relocation of the Poland and Hamilton mining claims in his own name. In 1892 he made application to the United States land office for a patent to each of those claims in his own name, and on the first day of May, 1893, received a patent to the Poland claim, and on the twentieth day of June, 1893, received a patent to the Hamilton claim. After Dickey made application for patent, he conveyed, March 10, 1892, an undivided one-half interest in said mining claims to F. M. Murphy. The transfers of title after patent issued to Dickey are as follows: March 2, 1894, Dickey to Charles D. Arms, an undivided one-half interest; July 2, 1894, F. M.

Murphy to D. M. Ferry, Simon J. Murphy, and Charles C. Bowen, an undivided one-half interest; on May 4, 1895, Charles D. Arms to E. B. Gage, an undivided one-half interest; on May 13, 1894, E. B. Gage to D. M. Ferry, Simon J. Murphy, and C. C. Bowen, an undivided one-half interest (said Murphy, Ferry, and Bowen being the appellees herein); and on July 23, 1896, Robert Scofield conveyed to appellant, B. F. Thompson, all of the interest in the Poland and Hamilton mining claims which he had acquired by deed from Collins on the 14th of November, 1883. On October 6, 1896, appellant, B. F. Thompson, brought action against appellees, alleging his ownership in and to an undivided one-half interest in the Poland and Hamilton mining claims; praying that defendants, Ferry, Murphy, and Bowen, be declared trustees for plaintiff of plaintiff's one-half interest, and that they be decreed to convey the same to him. Defendants answered, and plead: 1. An estoppel of record, by virtue of the foreclosure suit of Roberts against Collins, Scofield, and Thompson; 2. That whatever interest plaintiff or his predecessors may have heretofore had, the same was canceled and annulled by the application for an issuance of patent to Dickey; 3. That defendants were *bona fide*, actual, and innocent purchasers, without notice, actual or constructive, of any claim, legal or equitable, by plaintiff; 4. That defendants and their grantors have been in the peaceable and adverse possession of said mining claims, under title or color of title, since September 30, 1887. Alleged possession, development work, and improvements, of which plaintiff and his grantors had actual and constructive notice. The district court found for the defendants, —that defendants, for five years before suit filed October 6, 1896, had been in open, notorious, exclusive, peaceable, and adverse possession of both the Poland and Hamilton mining claims, and plaintiff was barred by the statute of limitations. From which judgment plaintiff appealed.

Morrison & Morrison, for Appellant.

The possession of one cotenant is the possession of all his cotenants. Sedgwick & Waite on Trial of Title of Land, par. 750; *Kinney* v. *Slattery*, 51 Iowa, 354, 1 N. W. 626; *Foble* v. *Bond*, 12 (Vroom) N. J. 427; *Mallett* v. *Uncle Sam etc. Co.*, 1 Nev. 188, 90 Am. Dec. 484; *Melton* v. *Lamboard*, 51 Cal. 258; *McCauley* v. *Harvey*, 49 Cal. 497.

In cases where a possession may be lawful and rightful, it cannot be presumed to be adverse. Thus one tenant in common cannot be presumed to hold adversely to the other, unless something more is shown than lapse of time. A trustee cannot be held to hold adversely to his *cestui que trust;* on the contrary, he is presumed to hold for his *cestui que trust* until the contrary appears. Perry on Trusts, sec. 866.

The trustees must clearly repudiate the trust and assume an adverse position, with notice to the *cestui que trust,* before the statute of limitations can begin to run. Perry on Trusts, sec. 863; *Speidel* v. *Henrici,* 120 U. S. 377, 7 Sup. Ct. 610.

To enable the trustee, without giving up possession, to turn it into an adverse holding, against the *cestui que trust,* the evidence must be clear and unmistakable, and such adverse claim must be brought home to the *cestui que trust* beyond a question of doubt. Perry on Trusts, sec. 864.

The tenant in common has a right to presume that the possession of his cotenant is his possession until informed of the contrary either by express notice or by acts and declarations which may possibly be equivalent to notice. *Miller* v. *Myles,* 46 Cal. 535; *Agiere* v. *Alexander,* 58 Cal. 21-28. See particularly *Union Cons. Silver M. Co.* v. *Taylor,* 100 U. S. 37; *Turner* v. *Sawyer,* 150 U. S. 578, 14 Sup. Ct. 192.

T. W. Johnston, for Appellees.

STREET, C. J.—Whatever may have been the condition of the legal title before Dickey received a patent, after the United States patent was issued to Dickey the legal title was in Dickey and his assigns, and at the time this action was brought the legal title was in appellees. This condition of the title was well recognized by the respective parties; and plaintiff sues in equity to recover his lost legal title to the undivided one-half interest, which was absorbed by Dickey in the issuance of the patent. It is well settled that, where a patentee has taken unto himself a title from the government, which, before patent issued, rested in himself and others, as tenants in common, by virtue of location interests, the patentee holds the title in trust for the true owners, and that a bill in equity will lie to enforce such a trust. *Johnson* v. *Towsley,* 13 Wall. 72; *Moore* v. *Robbins,* 96 U. S. 530; *Marquez* v. *Frisbie,* 101 U. S. 473;

*Rector* v. *Gibbon,* 111 U. S. 276, 4 Sup. Ct. 605; *Turner* v. *Sawyer,* 150 U. S. 578, 14 Sup. Ct. 192; *Cattle Co.* v. *Becker,* 147 U. S. 47, 13 Sup. Ct. 217. Where, from the relation of the parties, it can be inferred that the patentee was acting, not alone for himself, but for his cotenant as well, a court of equity will decree that in acquiring his patent he acted for the benefit of the cotenants. If there had been a previous recognition by the patentee of the rights of his cotenant, or if he took undue advantage of his cotenant, or where relations of trust and confidence between the patentee and his cotenant existed, the patent would inure to the benefit of all of the owners of the property. If no such trust relation existed; if the claim of the patentee has ever been adverse to his cotenant, and if at the time of his application, and prior thereto, he had constantly asserted his right to the whole of the property; if the cotenant was aware of the application for patent by the adverse holder in his own name alone, and was aware of the assertion of adverse rights, and the patentee had not done or said anything to cause his cotenant to believe that he was acting in his behalf as well as in his own, and had quietly permitted patentee to obtain the legal title,—it is doubtful if a court of equity would interfere. The Revised Statutes of Arizona on limitations of actions for land relied upon by appellees is as follows, to wit: "Par. 2297. Every suit to be instituted to recover real property as against any person in peaceable and adverse possession thereof, under title or color of title, shall be instituted within three years next after the cause of action shall have accrued, and not afterwards. Par. 2298. By the term 'title' is meant a regular chain of transfer from or under the sovereignty of the soil, and by 'color of title' is meant a consecutive chain of transfer down to such person in possession without being regular, as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing. . . . Par. 2299. Every suit to be instituted to recover real property as against any person having peaceable and adverse possession thereof, cultivating, using, or enjoying the same, and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted within five years next after the cause of action shall have accrued, and not afterwards." It was not pretended by appellant that he or his predecessors had been operating the

mines, or either of them, or doing any work thereon, by way of annual expenditure or otherwise, which makes the physical index of possession, but he relied wholly upon his legal rights as tenant in common with appellees and their predecessors in interest. He treats the sheriff's deed, the administrator's deed, and the relocation notice, as well as the patent, as instruments in harmony with his rights, and not adverse to them. Freeman, in his work on Cotenancy, says: ''A conveyance by one cotenant, purporting to convey an estate in severalty, cannot operate to the prejudice of the other. This is true only so far as the immediate effect of such conveyance as a transfer of title is concerned. It does not follow that no rights can grow out of it; nor that it is, even as against the other cotenants, mere waste paper for all purposes. Such a conveyance constitutes color of title. The entry of the grantee, made under the deed, and claiming an interest coextensive with that with which the deed purports to deal, is an entry under color of title. The cotenants are therefore bound to take notice of the deed, and of the entry made under it, and to take such steps as may be required to enforce a recognition of their legal rights. Should they fail to do so within the time prescribed by the statute of limitations, their rights will be no longer susceptible of enforcement; and their interests, by operation of that statute, will vest in the party in possession under the deed.'' In the *syllabus* of the case of *Unger* v. *Mooney*, 63 Cal. 586, 49 Am. Rep. 100, there is a correct summary of the matter, as follows, to wit: ''The possession of one tenant in common is the possession of his cotenant. There is no element of hostility in such a possession. An actual adverse holding will not operate as an ouster, and set the statute of limitations in motion, until the tenant out of possession has notice of such holding. But, if the hostile character of the possession is so openly manifested that his observation, as a man reasonably careful of his interests, would be sufficient to discover it, he will be deemed to have notice. Thus, where one of the two tenants in common conveys to a third person by deed purporting to convey the whole land, and the deed is recorded by the grantee, who enters under it; such entry is hostile in its nature; and the mere fact of possession by a stranger is enough to put him on inquiry and charge him with notice. So the making of valuable improvements, paying the taxes upon the

land, and receiving the rents and profits, without accounting or offering to account, are circumstances indicating an adverse holding; and their effect upon the cotenant is the same as if notice were directly communicated to him.  The means of knowledge being furnished by the open and notorious character of the possession, he is chargeable with the actual notice.''

The assignments of error relate principally to the finding of the court upon the statute of limitations, in which we think the district court was logically correct in its conclusions.  How stands the case of the plaintiff, under the equitable doctrine of laches?  Let us review the facts: In 1884 and 1885 the then owners of the properties—Collins, Scofield, and Thompson— placed a mill on one of the mines, or on land adjacent thereto, and commenced development work for the purpose of immediate revenues.  The proposition was a flat failure.  Collins abandoned the idea of pursuing his interests in the claims further, and allowed foreclosure proceedings of his mortgage. He went away, and left Scofield and Thompson in the vicinity of the mines.  Scofield moved the mill away, and nothing from that day until the present has been done or attempted to be done on the mines, by way of annual expenditures, development work, or work for revenue, by either Scofield or Thompson.  They were aware of the mortgage-foreclosure proceedings by Roberts, and neither of them paid any attention to the suit, or to the allegation in Roberts's complaint against them that they claimed an interest in the mines, nor opposed his prayer that their interests be foreclosed.  After the execution of the sheriff's deed, Roberts alone performed the annual expenditure upon the mines, up until the time of his death; and neither Scofield nor Thompson made any efforts to do anything with the mines, or give any expressions of their interest in them.  After Roberts's death there were administration proceedings, and an administrator's deed, which,—engaging in legal presumptions,—we must conclude was after legal notice given to all parties interested in the mines.  Dickey obtained his deed, and went into manual possession of the mines, by doing work thereon sufficient to keep the locations alive.  In 1891 he made a relocation of the mines.  It is claimed by appellant that those relocations were made for the purpose of correcting descriptions; but they were made in Dickey's name alone, without any word of protest from either

Scofield or Thompson. In 1892 Dickey made application for patent in the United States land office; and, engaging in legal presumptions, we must conclude that, following the application, notices were posted as in such cases required. There is no showing in the record that Thompson and Scofield were not aware of any of these proceedings. A patent was issued in 1893 to Dickey, and following the issuing of the patent there were transfers as follows: One-half interest by Dickey to Arms, one-half interest by F. M. Murphy to appellees, one-half interest by Arms to Gage, and one-half interest by Gage to appellees; and during all of this time neither appellant nor Scofield made any protest or made any claim to any interest in the mines, and the record is still silent about their being unaware of the transfers. Under each of the transfers of title the grantees went into possession, and operated the mines. They have permitted the present owners of the title to expend thirty thousand dollars in improvements and development work; they permitted appellees and their assigns to do development work upon the mines to the extent of running over two thousand feet of tunnels; and still the record is silent as to Scofield and Thompson being unaware of the work going on, while it is asserted by appellees that Thompson and Scofield were aware of every step in the transfer of titles. It is asserted by appellees that they were fully cognizant of the development work done upon the mines, the running of the tunnels, and the expenditure of the vast sums of money to put the mines in working shape, yet from 1886 to 1896 they have not been heard to make a claim to any interest in the mines. Under the equitable doctrine of laches, Thompson is estopped from now asserting that he is a cotenant, and that appellees are trustees of the title for his use. The judgment of the district court is affirmed.

Davis, J., and Doan, J., concur.