### HARVEY v. SELLERS et al.

#### (Circuit Court, S. D. New York. April 3, 1902.)

#### No. 7,520.

EQUITY—JURISDICTION—ACCOUNTING—QUASI PARTNERSHIP.

 A written contract by which complainant agreed to aid and co-operate in financing and exploiting certain patent rights owned by defendants, in consideration of which they agreed that one-third of the net profits received by them from the financing and exploiting of such rights should belong to complainant and be paid over to him as received, whether cash, stock, or other securities, if it did not create a partnership in the undertaking made it a joint one, in the profits of which complainant was to share, and created a trust relation between the parties which entitled him to maintain a suit in equity in a federal court, having jurisdiction, for an accounting from defendants as to money or stocks received by them as a result of the enterprise and their joint efforts.[1]

In Equity. Suit for accounting. On bill, answer, and replication, and on motion for reargument.

Henry Clark Johnson, for plaintiff.
Samuel H. Guggenheimer, for defendants.

HAZEL, District Judge. It is sought to maintain this suit for an accounting on the theory that a copartnership is shown to have existed

[1] See Account, vol. 1, Cent. Dig. §§ 11, 21 [i], 26 [s]; Joint Adventures, vol. 29, Cent. Dig. § 7 [l].

between the parties in a "special venture of promoting and exploiting the Severy impression process rights." The case was heard on the bill, answer, and replication, and therefore the question of whether this proceeding may be maintained must be ascertained from the averments of these pleadings. It appears from the bill that on October 12, 1898, the defendants addressed the following communication to the plaintiff:

"In consideration of your co-operation and assistance in financing and exploiting of the Severy impression process rights, both home and foreign, we hereby agree that one-third of all the net profits received by us from the financing and exploiting of the said rights shall belong to you, and be paid over to you as received by us, whether cash, stock, or other securities.

"Yours very truly,                    [Signed]  R. H. Sellers & Co.
"I agree to and accept the above.
"[Signed]                              Wm. S. Harvey."

The bill shows the performance of services in the nature specified by the contract, and asks for an accounting, and an injunction restraining the defendants from disposing of stock and other property received by them as promoters of the Severy Process Company, and for a receiver to take possession of all papers and documents pertinent to the formation of the company. The answer, among other things, denies the partnership, but avers that the agreement was to remunerate the complainant for services rendered and to be rendered in aid of the formation of a syndicate to finance the enterprise. The federal courts of equity will take cognizance of the trust relation existing between persons standing in such connection, and require an accounting between parties in settlement of their controversies. They will also take cognizance of suits where the accounts are mutual or complicated or intricate. Fost. Fed. Prac. (3d Ed.) 30.

It is contended by the defendant that the bill of complaint does not show a partnership, and therefore no order for an accounting of the transaction can be decreed by the court sitting in equity. The practice of the courts of the United States in cases for an accounting seems to be limited to three grounds, to wit: First, the complicated character of the accounts; second, discovery; third, the fiduciary or trust relationship of the parties. The remedy, under the latter subdivision, has reference to matters of difference arising out of partnership transactions, as well as where the parties stand in a fiduciary relationship towards each other. The question here is replete with difficulty. It does not appear by express phraseology of the contract that a partnership was intended by the parties, but a division of the profits resultant from their joint endeavor to successfully finance and exploit a certain venture is expressly stated. What was intended by the words employed in this contract? A cursory examination makes it clear that the complainant on his part was required to co-operate and aid in this undertaking. For this he was to receive one-third of the net profits, whether cash, stock, or other securities. I am quite well satisfied by the pleadings, as no evidence was offered on the hearing that no co-partnership was intended. It is true the parties engaged in a common object, and that object was to interest persons in financing their projects for the formation of companies and corporations. The com-

plainant bases his argument solely upon the alleged existence of a copartnership, and a right to an accounting is claimed to spring therefrom. The view that I take of this controversy, however, renders it unnecessary to find that the relation of partnership existed between the parties to justify relief at the hands of a court of equity. Undoubtedly this was a joint enterprise for the mutual benefit of the parties engaged in it. Complainant's reward depended upon a contingency. When success was attained, he was to have and receive a division of the profits.

The right to an accounting exists where the position of the parties is in the nature of a quasi partnership, independently of the actual existence of a partnership relation. 2 Beach, Eq. Jur. 911; Marvin v. Brooks, 94 N. Y. 71; Marston v. Gould, 69 N. Y. 220. The facts here establish a joint interest in a specific undertaking. The agreed compensation of the complainant was one-third of the net profits in money, stocks, or other securities. The maze of irrelevant allegations contained in the bill, descriptive of plans and schemes for floating the enterprise, while almost beyond comprehension, does not entirely obscure the essence of the agreement for division of net profits upon which the bill is based. This, I think, entitles complainant to an accounting. How otherwise can he enforce his remedy? The proceeding is essentially in equity. A diversity of citizenship exists, and must be brought on the equity side of the court. Authorities strictly applicable to the facts shown here do not seem abundant. The case of Bentley v. Harris, 10 R. I. 434, 14 Am. Rep. 695, which is cited in Pomeroy's Equity Jurisprudence, seems to clearly apply. In that case the court said:

"Is a person who is to receive a part of the profits of the business in whole or part pay for his services entitled to an account of those profits? * * * In the present case the complainant has an interest in the profits, not as profits, but as wages. He has no agency or control, but is in all respects the servant of his employer. * * * There are a few cases where the language of the court would seem to imply that a person who receives part of the profits as pay is not entitled to account, unless connected with other things which would make him a partner. Denny v. Cabot, 6 Metc. (Mass.) 82–92; Champion v. Bostwick, 18 Wend. 175–184, 31 Am. Dec. 376; Ex parte Hamper, 17 Ves. 404–412; 1 Story, Partn. §§ 48, 49. * * * But there seems to be sound sense in the remarks of Bissett on Partnership (12–15), quoted in Colly. Partn. (4th Am. Ed.) p. 42, § 45, note. Some of the writers, and even some of the judicial authorities, on this subject, appear to think that they have surmounted the difficulty by confining the rule of liability (as a partner) to the cases where the party would have a right to an account of the profits; but to this it may be answered that in all cases where a person is to be paid for his services by a sum proportionate to the profits he must be entitled to an account of the profits; if not, how is he to ascertain that he has what he stipulated for? See 7 Jarm. Conv. (by Sweet) 11, note 'a.' In many of the cases it will be seen that, notwithstanding a clear right to an account, no partnership was held to subsist either as between the parties or as to third persons. * * * We think the complainant entitled to an account."

There are other authorities cited in this Bentley Case which strengthen this contention. The complainant is therefore entitled to maintain his bill in equity in accordance with this doctrine. The cause must therefore be referred to a master. As it is doubtful

whether an injunction or a receivership would be beneficial at this stage of the proceeding to either of the parties, no order will be made in that regard. So decreed.

## Motion for Reargument.

### (April 28, 1902.)

As stated in the opinion, the case was heard upon the verified bill, answer, and replication. The bill does not demand an answer under oath. It is urged by the defendants that, the complainant not having waived the defendant's oath, the bill should be dismissed, unless the equities are established by the specific testimony of two witnesses, or one witness corroborated by proper circumstances. Vigel v. Hopp, 104 U. S. 441, 26 L. Ed. 765. The cases cited were actions based on fraud (Morrison v. Durr, 122 U. S. 518, 7 Sup. Ct. 1215, 30 L. Ed. 1225; Cattle Co. v. Becker, 147 U. S. 47, 13 Sup. Ct. 217, 37 L. Ed. 72), in which every allegation of fraud was denied. I think these are quite different from the case at bar. Taking the answer as true, the complainant performed services in financing the enterprise. The answer in this case is not entirely responsive to the bill. The gist of the averments of the complaint is the performance of services in financing and exploiting the enterprise upon which complainant and defendants embarked pursuant to written contract. It is admitted that the defendants were impecunious, and that they needed money at crucial times wherewith to meet obligations springing from the Severy contracts, and that complainant procured money, $5,000 at one time, and $10,000 at another, in aid of the enterprise. Defendants insist that these transactions were independent of the contract. But I think that the letter of April 1, 1899, is corroborative of complainant's contention. That letter was written subsequent to the exploitation of the enterprise and transfer of properties to a corporation organized to purchase the rights and patents covering the Severy process. At this time the defendants had received remuneration for their services in stock and money. Whether a profit was realized is not material. By the terms of the contract, the complainant has a right to ascertain. The letter states:

"We note what you say, and will figure up the account at the earliest opportunity. We have partially done so, but have not time to copy it off just yet. * * * We are sorry that the accumulated debts, which must be paid before any money can be divided between us, have amounted to so much that there will not be a large sum for division. There will certainly not be thirty-five hundred dollars apiece for us. We will soon have the bills paid and statement made up, with receipts and vouchers, which we wish to go over with you some time when you are here, so that we all may understand matters alike."

This is no denial of contractual obligations or claim of abandonment by complainant prior to termination of the mutual undertaking. It must be taken as admitted that complainant carried out the contract, and is entitled to an accounting. The contract does not state how much money complainant was to raise, nor the extent of the services which he was to perform. It was a joint undertaking, the success of which inured to the benefit of those associated

together. The essential allegations of the bill are set out with sufficient precision. The averments on information and belief are chiefly those of which defendants have knowledge, and not the complainant, and from which complainant's usefulness to defendants may be inferred.

Motion denied. Form of decree to be submitted to counsel for defendants.