AMACKER v. NORTHERN PAC. R. CO.

(Circuit Court of Appeals, Ninth Circuit. November 27, 1893.)

No. 97.

1. PUBLIC LANDS—PRE-EMPTION—EFFECT OF FILING AMENDED CLAIM.
   The voluntary filing of an amended pre-emption claim, excluding part of the lands previously pre-empted, is a cancellation of the first entry as to the lands excluded, although no formal cancellation is entered of record.

2. SAME—HOMESTEAD— CASH ENTRY—GRANT TO NORTHERN PACIFIC RAILROAD COMPANY.
   Act June 15, 1880, § 2, (21 Stat. 238,) allowing persons who, under any homestead law, had theretofore entered lands properly subject to such entry, to entitle themselves thereto by paying the government price therefor, restored to a homestead settler, whose claim had not been abandoned, although his entry had been canceled for failure to comply with the requirements of the law under which it was made, such a right or claim to the land that it did not pass to the Northern Pacific Railroad Company, under the grant to said company by Act July 2, 1864, § 3, (13 Stat. 367,) of lands on each side of its road which were "free from pre-emption or other claims or rights" at the time of the definite location of its line, where such definite location was made after the passage of the act of 1880. 53 Fed. 48, reversed.

3. SAME.
   The railroad company could not complain of the fact that the patent was issued to the widow of the person entitled to make the cash entry under the act of 1880, he having been alive at the time of the definite location by the company of its line.

In Error to the Circuit Court of the United States for the District of Montana.

At Law. Action in the nature of ejectment by the Northern Pacific Railroad Company against Maria Amacker. Judgment for plaintiff. 53 Fed. 48. Defendant brings error. Reversed.

Thomas C. Bach and Massena Bullard, for plaintiff in error.

Fred. M. Dudley, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. This is an action of ejectment in which the Northern Pacific Railroad Company sued the plaintiff in error to recover the possession of the N. W. ¼ section 17, township

10 N., range 3 W. of the principal meridian of Montana. Judgment was for the company. It relied for title on the act of congress passed in 1864, granting it the odd sections of government land within certain limits on each side of its railroad line wherever on the line thereof the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office. The act also provides that if, prior to said time, the sections designated shall have been granted, sold, reserved, or occupied by homestead settlers, or pre-empted or otherwise disposed of, other lands shall be selected by the company in lieu thereof, under the direction of the secretary of the interior, in alternate sections designated by odd numbers, not more than 10 miles beyond the limits of said alternate sections. The act also requires the president to cause the lands to be surveyed for 40 miles on both sides of the entire line of the road after the general route shall be fixed, and provides that the odd sections shall not be liable to sale or entry or pre-emption except by said company. The character of the grant to the company is well defined. It is one in praesenti, but, as was said in St. Paul & P. R. Co. v. Northern Pac. R. Co., 139 U. S. 1, 11 Sup. Ct. 389: "* * * The grant was in the nature of a float, and the title did not attach to any specific sections until they were capable of identification; but, when once identified, the title attached to them as of the date of the grant, except as to such sections as were specifically reserved." In considering, therefore, what lands ultimately passed by the grant, there are two periods principally to be regarded: one the date of the granting act, the other the filing of the map of definite location of the road. Lands to which claims had attached at either period did not pass, though they were free from the claim at the other period.

In Bardon v. Railroad Co., 145 U. S. 535, 12 Sup. Ct. 856, a preemption claim existed at the date of the granting act which, however, had been abandoned before the map of definite location was found. It was held that it was not included in the grant. See, also, Railroad Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112.

In Railway Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, a homestead entry was made after the date of the grant, but before the filing of the map of definite location, and it was held that the land was excepted from the grant.

It is contended on behalf of the plaintiff in error that the land in controversy in this suit is excluded from the operation of the grant to the railroad company upon two distinct grounds: First, by virtue of the pre-emption settlement of William M. Scott; and, second, by the homestead entry of McLean.

On the 5th day of October, 1868, one William M. Scott filed a pre-emption declaratory statement in the proper land office, claiming the said land, and alleging settlement thereon, which statement and filing were accepted and placed of record in the land office, and said entry has not been canceled. In the year 1869 the said Scott

built a cabin upon the premises, and lived there until the fall of that year. It was proven on the trial, over the objection of the plaintiff in error, that in the fall of 1869 Scott removed from the land, and lived in the city of Helena until 1878, when he changed his residence to the city of Butte; and that he never returned to the land in controversy, and never exercised any acts of ownership over the same, but, on the contrary, abandoned the land and his pre-emption rights in 1869. It is urged that the facts in regard to the abandonment of the claim by Scott were not properly the subject of inquiry on the trial; that, since the pre-emption entry remained of record uncanceled upon the plats of the land office, both at the time of filing the map of general route of the road and at the time of fixing the definite line of the same, it served to place the land within the exceptions named in the grant to the railroad company;- and that the facts in regard to the alleged abandonment of the claim can only be considered by the officers of the land office, or in a direct proceeding to cancel the entry.

But, while the pre-emption entry remains uncanceled upon the plats of the land office, it elsewhere appears from the records that upon the 14th day of October, 1872, Scott voluntarily filed in the land office his amended pre-emption claim, wholly excluding therefrom the land in controversy, and fixing his pre-emption entry upon other lands. This act must be deemed an effectual cancellation of his former entry, so far as the land in controversy is concerned. The fact that the entry remained of record upon the plats, and no formal cancellation of the same was entered, is immaterial. If we concede that the entry was in force upon the date of the filing of the map of general route of the road, which was February 21, 1872, it was nevertheless canceled upon October 14th of the same year; so that both at the date of the grant to the railroad company and the date of fixing the line of definite route this land was free from the Scott pre-emption. The fact that at an intermediate date, the date when the map of general route was filed, the land was subject to the pre-emption claim, and was therefore not within the class of lands which by operation of law were withdrawn from settlement and entry under the public land laws, does not in any way affect the title or status of the land as between the parties to this action.

The map of general route filed on the 21st day of February, 1872, was filed in the general land office. On the 6th day of May, 1872, it was filed in the local land office of the district within which the land is situated. Three days before this last date William McLean made his homestead entry upon the land in controversy. On April 21, 1876, it was provided by statute that all pre-emption and homestead entries of the public lands made in good faith by actual settlers upon the tracts, of not more than 160 acres each, within the limits of any land grant, prior to the time when notice of withdrawal of the lands embraced in such grant was received at the local land office, and where the pre-emption and homestead laws have been complied with, the proper proofs thereof have been made by the parties holding such tracts, shall be confirmed, and patents

for the same shall be issued to the party entitled thereto.   By the act of June 15, 1880, (section 2,) it was provided that persons who have heretofore under any of the homestead laws entered lands properly subject to such entry, or persons to whom the right of having so entered for homesteads may have been attempted to be transferred by bona fide instruments in writing, may entitle themselves to said lands by paying the government price therefor, with credit for the amount already paid, with a further provision that this shall in no way interfere with the rights or claims of others who may have subsequently entered said lands under the homestead laws.

On the 3d day of July, 1879, the register and receiver of the local land office wrote to the commissioner of the general land office that McLean had been notified under the directions contained in the circular of December 20, 1873, to show cause why his entry should not be canceled for failure to make proof of compliance with the law within the statutory period, and that he had taken no action in the matter, and recommended the cancellation of his entry; and thereupon, on September 11, 1879, said entry was canceled.   McLean died on August 20, 1882.    After his death, his widow, upon the assumption that his right to purchase under the act of 1880 descended to her, made application to purchase upon the 15th day of March, 1883.    McLean's entry having been recognized as confirmed under the act of April 21, 1876, payment for the land under the subsequent act of June 15, 1880, was accepted as equivalent to proof of compliance with the provisions of the homestead law, and a patent was accordingly issued to the widow.

There can be no question but that the act of April 21, 1876, protected and made valid the homestead entry of McLean.   There was nothing in the grant to the railroad company that would deprive congress of the power to pass that act.   The provision in the grant that upon the filing of the map of general route the lands within certain limits were to be withdrawn from entry or settlement, would not interfere with the recognition of the right of a homestead settler, whose entry was made after that date; and the rule adopted in the act was a reasonable one in providing that the withdrawal should take effect only from the date when the map should be filed in the local land office, and thereby information should be conveyed as to the particular lands to be withdrawn.   It was the object of the act to afford relief to persons who, without notice of the withdrawal, had made entries on lands prior to the time when notice of the actual withdrawal came to the officers of the local land office.   But the homestead entry of McLean having been canceled upon the 11th day of September, 1879, and all his rights thereunder extinguished, the decision of the case is left to depend upon the question whether or not the act of June 15, 1880, restored to the homestead settler such right or claim to the land that thereby it came within the exceptions contained in the grant to the railroad company, and was not upon the 6th day of July, 1882, land to which the United States had full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims.   Notwithstanding the

cancellation of his entry, the record discloses that there was no abandonment of the claim by McLean.

The act of June 15, 1880, gave him the right to acquire title to the land by paying the government price therefor. The only limitation upon that right was the reservation which protected the rights of others who might subsequently enter said land under the homestead laws. This reservation could in no way apply to the railroad company. The inquiry is therefore confined to the single subject of the nature of the right thus conferred upon McLean. The act gave him the absolute right to purchase this land as against all the world except subsequent homestead settlers. That right was acquired on the passage of the act in 1880. The act contains no expressed limitation of time within which the right is to be exercised. There is nothing in the language employed or the nature of the right conferred which would indicate that the right should have expired on July 6, 1882, the date when the map of the definite route of the road was filed. The definite and absolute right to purchase a tract of the public land at a fixed price conferred by statute upon the homestead entry man constitutes, in our judgment, a claim upon the land such as is contemplated in the reservation from the grant to the Northern Pacific Railroad Company. The right, in this instance, differed in no essential feature from the right and claim of a pre-emption settler. The pre-emptioner's right to purchase the land upon which his claim rests is no greater, and is no more protected by law, than that of the homestead entry man, whose entry has been canceled, but not abandoned. The cancellation of the entry extinguished the right to prove residence and acquire title under the homestead laws, but the entry was restored to life and subsisted for the purpose of protecting the right to purchase the land under the terms of the act. It served thereafter to notify the railroad company and all others except subsequent homestead settlers of the nature of the right that still existed in McLean. Such being the status of this land at the time the map of definite route was filed, the grant to the railroad company could not attach to it, for it was at that date land subject to a claim.

It is suggested that the right to purchase under the act of June 15, 1880, was personal to McLean, and did not descend to his widow; and reference is made in support of that contention to the case of Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, where the court expressed a doubt whether the widow of the homestead settler was entitled to the benefit of the act. It is unnecessary to determine that question in this case. McLean was still living at the period at which the rights of the railroad company were fixed, the date of filing the map of definite location. If the patent were erroneously issued thereafter to the widow of McLean, it is a matter of which the railroad company, the plaintiff in ejectment, cannot complain; for it must recover, if at all, upon the strength of its own title.

The judgment is reversed, and the cause is remanded for a new trial, with costs to the plaintiff in error.