### NORTHERN PAC. R. CO. v. DE LACY.

(Circuit Court, D. Washington. September 13, 1894.)

No. 195.

**1. PUBLIC LANDS—RAILROAD GRANTS—REVOCATION.**

The grant made to the Northern Pacific Railroad by the act of July 2, 1864, to aid in constructing its line across the Cascade Mountains to Puget Sound, took effect as of that date, and was not revoked or canceled by the joint resolution of May 31, 1870, by which this line, formerly the main line, was designated as the branch line, and the former branch line, to the Columbia river, was designated as the main line. U. S. v. Northern Pac. R. Co., 14 Sup. Ct. 598, 152 U. S. 284, explained.

**2. SAME—EXCEPTIONS TO GRANT—PRE-EMPTION ENTRY—ABANDONMENT.**

The filing, after the date of the granting act, of a pre-emption claim to lands which fall within the primary grant limits, does not operate to except the land out of the grant, where such claim is finally abandoned by the pre-emptioner, and his rights forfeited, because of a decision by the land office that the land is not subject to entry.

**3. SAME.**

The fact that the pre-emption declaratory statement remains uncanceled on the records of the land office until after the definite location of the road cannot be considered as excepting the land from the grant, where both parties to the suit admit the fact of the previous abandonment and forfeiture by the pre-emptioner, and the party contesting the railroad title predicates his right to the land upon such abandonment.

This was an action of ejectment brought by the Northern Pacific Railroad Company against James De Lacy to recover certain lands alleged to fall within the grant made by congress to the railroad company.

Ashton & Chapman and Fred. M. Dudley, for plaintiff.
Ballard & Norris, for defendant.

GILBERT, Circuit Judge. The Northern Pacific Railroad Company brings ejectment to recover the possession of 160 acres of land in section 21, township 20 N., range 3 E. of the Willamette Meridian, in the state of Washington. The plaintiff claims title by virtue of the act of congress of July 2, 1864, incorporating the Northern Pacific Railroad Company, and authorizing it to construct and maintain a railroad from a point on Lake Superior westerly, on a line north of the forty-fifth degree of latitude, to some point on Puget Sound, with a branch, via the valley of the Columbia River, to a point at or near Portland, in the state of Oregon, leaving the main line at the most suitable place, not more than 300 miles from its western terminus; also, the joint resolution of May 31, 1870, authorizing the company to construct its main road to some point on Puget Sound, via the valley of the Columbia River, with the right to locate and construct its branch from some convenient point on its main trunk line, across the Cascade Mountains, to Puget Sound. The

defendant claims title and possession by virtue of a homestead entry made, or attempted to be made, by him on the 9th day of April, 1886; and he contends that the land in controversy was excepted both from the grant of July 2, 1864, and from the joint resolution of May 31, 1870, by reason of the pre-emption claim of John Flett. He alleges that John Flett filed a pre-emption declaratory statement upon this land on the 9th day of April, 1869, and occupied the same under said declaratory statement until 1871, and further states that "Flett, not having resided on the land since 1871, forfeited all his right to make final proof," but that the pre-emption declaratory statement so entered in the land office by Flett remained of record therein, and was not canceled until 1891. It is the contention of the defendant that this declaratory statement of Flett, remaining of record at the time the lands granted to aid the construction of the Northern Pacific were withdrawn from settlement, when the map of the general route was filed, and at the time the map of definite location was filed, operated to except the land from the grant to the Northern Pacific, under the words of the granting act, as the same have been construed by the courts.

The land in controversy lies within the primary limits of the land grant both of the main line of the railroad, as definitely located between Portland and Puget Sound, and the line of the Cascade branch, as definitely located between the point where it leaves the main line, and crosses the Cascade Mountains to Puget Sound. It has been held that the grant of lands to aid the construction of that portion of the main line between Portland and Puget Sound dates from the joint resolution of May 31, 1870, and that prior to that time there was no land grant whatever in aid of the construction of that portion of the road. U. S. v. Northern Pac. R. Co., 152 U. S. 284, 14 Sup. Ct. 598. And if the title in controversy in this suit were to be determined by the rights which the railroad company acquired under the joint resolution, only, the decision must be for the defendant; for it is clear that at and prior to the date of the joint resolution there was upon file in the local land office a valid and subsisting pre-emption entry upon the land in controversy, which entry, being unforfeited and uncanceled, operated to except the land from the grant. Railway Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566; Bardon v. Railroad Co., 145 U. S. 535, 12 Sup. Ct. 856; Land Co. v. Griffey, 143 U. S. 32, 12 Sup. Ct. 362. But the land is, as already shown, also within the primary limits of the grant to aid the construction of the Cascade branch, and it remains to be considered how the rights of the respective parties are affected by that fact. The grant of July 2, 1864, gave land in aid of the construction of a railroad across the Cascade Mountains to Puget Sound. That grant was not intended to be abrogated by the joint resolution of May 31, 1870; and there is nothing in the opinion of the supreme court in U. S. v. Northern Pac. R. Co., supra, to the contrary. That decision goes no further than to hold that in the act of 1864 there was no land grant to aid the construction of a line between Portland and Puget Sound, and nothing to show that it was the intention of congress to connect those two points by a railroad. It must be held, there-

fore, that the grants to aid the construction of a line by way of the Columbia River valley to Portland, and a line across the Cascade Mountains to Puget Sound, took effect upon July 2, 1864, and that the joint resolution of May 31, 1870, while designating the Columbia river line as the main line, which had before been called the branch line, and naming the line across the Cascade Mountains to Puget Sound the branch line, which had before been the main line, did not, and was not intended to, revoke or cancel the grants in aid of those respective lines, but recognized the grants as existing and remaining in force. The lands in aid of the line across the Cascade Mountains to Puget Sound were granted in 1864. The land in controversy in this suit was public land at that time, and it passed to the railroad company by the grant, if at the date of the definite location, to wit, on May 26, 1884, the United States had full title, or the same were not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights.

It is contended that the Flett pre-emption entry in the land office constituted a pre-emption claim, which operated to bring the land within the exception contained in the grant, and that, therefore, the railroad company has no title upon which to recover. If there were no information before the court concerning the pre-emption claim, other than the entry in the land office, a different case would be presented; but the defendant alleges in his answer an abandonment of this land by Flett in 1871, and a forfeiture of all his rights under the pre-emption entry. He produces before us also the record of a contest before the register and receiver of the local land office of the district in which this land is situated, which contest was carried by appeal to the secretary of the interior, and by him decided on the 28th day of November, 1891. From the record so offered, it appears that the plaintiff and defendant in this case, and John Flett, were parties, and appeared and presented the evidence of their respective rights. In that contest, as appears from the record, the evidence concerning Flett's pre-emption settlement was fully submitted, and it was shown that in 1870 Flett had offered to prove up upon his claim before the officers of the local land office, and had been informed by them that the land was railroad land, and was not subject to his entry; that he made no appeal from that decision, and in consequence thereof abandoned his claim, and in 1874 made homestead entry on other lands. In consequence of the conclusion so reached by the secretary of the interior, a patent was issued from the government to the railroad company for the land on December 13, 1892. There are two periods to be regarded in determining whether the lands passed to the railroad company under its grant,—the date of the grant, and the date of the definite location of the road. If at either of these dates a claim attached, such as is mentioned in the exceptions to the granting act, the land which was subject to such claim was excluded; but if such a claim attached at a time between those dates, and was extinguished before the latter date, it would have no discernible effect upon the status of the title. Amacker v. Railroad Co., 7 C. C. A. 518, 58 Fed. 850. And this irrespective of whether or not

the claim was in existence at the time of filing the map of general route, so as to exclude the land from the consequent withdrawal in favor of the railroad company.   The fact that this land was not among the lands so withdrawn from sale or settlement has no bearing upon the questions involved.   The withdrawal was a provision for the protection of the grant, but it was not a step in the acquirement of the railroad company's title.   Its title to lands under the grant did not depend upon the withdrawal.   The material fact in this case is that at the time the line was definitely located the claim of Flett no longer attached, but had been extinguished.   It is immaterial whether it was extinguished by a proceeding in the land office resulting in a cancellation of the entry, or by the voluntary action of the claimant, amending his entry and releasing the lands, as in the Amacker Case, or by the abandonment and forfeiture of the claim, as in the case now under consideration.   The defendant relies upon the fact that the Flett entry remained uncanceled until 1891.   A declaratory pre-emption statement, on file prior to and at the time the grant was made, would be proof of the intention of congress to exclude from the grant the land covered thereby; and such an entry in the files of the land office, made after the date of the grant, and remaining in existence at the time of the definite location, so as to furnish evidence of a claim that might ripen into a title by compliance with the land laws, would likewise serve to exclude the land from the grant, for it was not the intention of the grant, as construed by the decisions, to permit an inquiry into the bona fides of such a claim, or the performance of the conditions which rested upon the claimant.   But here it is not only admitted by both the parties to the action that Flett abandoned and forfeited his claim in 1871, but the very right of the defendant to possess and claim the land is predicated upon such abandonment by Flett, and the extinction of Flett's claim.   Such an admission must be held to destroy the effect and force of the entry in the land office.   The court will not regard the existence of an entry, the life of which is admitted to have expired, but must be guided by the admitted fact. It must be held, therefore, that the land in controversy was public land, subject to the grant in 1864, and free from any claim that would exempt it therefrom in 1884, when the line of the road was definitely located, and the plaintiff is therefore entitled to judgment.