OREGON & C. R. CO. v. UNITED STATES (three cases).

(Circuit Court of Appeals, Ninth Circuit.   November 2, 1906.)

Nos. 1,223, 1,224, 1,225.

PUBLIC LANDS—RAILROAD GRANT—LANDS EXCEPTED.

A grant of public lands to aid in the construction of a railroad, which excepts therefrom such lands within the place limits as shall be found to have been "granted, sold, reserved, occupied by homestead settlers, preempted or otherwise disposed of," did not attach to lands which were within the primary limits of the grant as fixed by the definite location of the line of road, but upon which, at the time the map of definite location became effective, there were homestead and pre-emption claims filed in the proper land office, and remaining of record and uncanceled.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, §§ 244-246.]

Appeal from the Circuit Court of the United States for the District of Oregon.

For opinion below, see 133 Fed. 953.

See 144 Fed. 832, 143 Fed. 765.

These cases were argued and submitted together.   The suits were brought to procure the cancellation of certain patents alleged to have been erroneously issued by the government to the Oregon & California Railroad Company under the act of Congress of July 25, 1866 (chapter 241, 14 Stat. 239).   All of the lands involved in the suits are within the primary limits of that grant, and are all opposite and coterminous with sections of the railroad definitely located by a map thereof filed with the Secretary of the Interior on the 29th of October, 1869, and approved by the Secretary January 29, 1870.   These lands consisted of 17 separate tracts, 9 of which were claimed under homestead filings, and 8 under pre-emption filings, made before the date of the approval of the map of definite location of the railroad by the Secretary of the Interior, and all but 3 of them being made before the filing of that map.   Patents for these lands were issued to appellant during the years 1871, 1872, 1877, and 1894, as parts of the lands granted by the act of Congress mentioned.   The appellant afterwards sold the land, with the exception of one 80-acre tract, to bona fide purchasers, who were without notice of the homestead and pre-emption filings thereon, except the presumptive notice given by the law.   In the agreed statement of facts made by the respective counsel it appears that, including the lands here in suit, the appellant has not received the full quantity of land granted to it by the act of July 25, 1866, and that the patents to the lands in controversy were duly and properly issued unless such lands were excepted from the grant to the appellant by reason of the homestead and pre-emption filings mentioned.   The court below was of the opinion that the lands in question were excepted from that grant by such filings, and that the patents were, therefore, erroneously issued by the government, and a decree was entered in each case in accordance with that opinion, canceling appellant's patent to the 80-acre tract, still unsold, giving judgment against the appellant for $1.25 an acre for each tract sold by it for such amount or more, and for $56 received by it from the sale of one of the tracts for that amount, being less than $1.25 an acre. The present appeals are from those decrees.

William D. Fenton and William Singer, Jr., for appellant.
John H. Hall and Francis J. Heney, U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

Several of the points made on behalf of the appellant in the present cases were decided against its contention in the case of United States v. Southern Pacific Railroad Co. et al. (C. C.) 117 Fed. 544, which case was affirmed by this court in (C. C. A.) 133 Fed. Rep. 651, and by the Supreme Court in Southern Pac. R. Co. v. United States, 200 U. S. 341, 26 Sup. Ct. 296, 50 L. Ed. 507. Is it true, as further contended on behalf of the appellant, that the lands in suit were embraced by the grant of July 25, 1866, and, as consequence, that the patents issued therefor were valid? The granting clause in that act is as follows:

"And be it further enacted that there be, and hereby is, granted to the said companies, their successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line, and to secure the speedy transportation of the mails, troops, munitions of war, and public stores over the line of said railroad, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile (ten on each side) of said railroad line; and when any of said alternate sections or parts of sections shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, other lands, designated as aforesaid, shall be selected by said companies in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections designated by odd numbers, as aforesaid, nearest to and not more than ten miles beyond the limits of said first named alternate sections; and as soon as the said companies or either of them, shall file in the office of the Secretary of the Interior a map of the survey of said railroad, or any portion thereof, not less than sixty continuous miles from either terminus, the Secretary of the Interior shall withdraw from sale public lands herein granted on each side of said railroad, so far as located and within the limits before specified. The lands herein granted shall be applied to the building of said road within the states, respectively, wherein they are situated. And the sections and parts of sections of land which shall remain in the United States within the limits of the aforesaid grant, shall not be sold for less than double the minimum price of public lands when sold: Provided, that bona fide and actual settlers under the improvement, and occupation, as now provided by law, purchase the same at the price fixed for said lands at the date of such settlement, improvement and occupation: And provided also, that settlers under the provisions of the homestead act, who comply with the terms and requirements of said act, shall be entitled within the limits of said grant, to patents for an amount not exceeding eighty acres of the land so reserved by the United States, anything in this act to the contrary notwithstanding."

What Congress granted by that act, and all that the appellant could acquire thereby, were certain sections of the "public land."

In considering a similar grant—that of July 2, 1864 (chapter 216, 13 Stat. 365), made to the Northern Pacific Railway—this court said in the case of Amacker v. Northern Pacific Railroad Co., 58 Fed. 850–851, 7 C. C. A. 518, 541:

"The character of the grant to the company is well defined. It is one in præsenti, but, as was said in the St. Paul & Pacific Railroad Company v. Northern Pacific Railroad Company, 139 U. S. 1, 5, 11 Sup. Ct. 389, 390, 35 L. Ed. 77, 'the grant was in the nature of a float, and the title did not attach to any specific sections until they were capable of identification; but, when once identified, the title attached to them as of the date of the grant, except as to such sections as were specifically reserved.' In considering, therefore, what lands ultimately passed by the grant, there are two periods principally to be regarded—one the date of the granting act, the other the filing of the map of definite location of the road. Lands to which claims had attached at either period do not pass, though they were free from the claim at the other period. In Bardon v. Northern Pacific Railroad Company, 145 U. S. 535, 12 Sup.

Ct. 856, 36 L. Ed. 806, a pre-emption claim existed at the date of the granting act, which, however, had been abandoned before the map of definite location was filed. It was held that it was not included in the grant. See, also, Hastings & Dakota Railroad Company v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 363. In Kansas Pacific Railway Company v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122, a homestead entry was made after the date of the grant, but before the filing of the map of definite location, and it was held that the land was excepted from the grant."

The agreed statement of facts in the present cases shows that all of the lands in controversy were parts of odd-numbered sections of unoffered land, and that the homestead and pre-emption claims thereto were filed in the proper land office, and were of record and uncanceled at the time the map of the definite location of the appellant's road became effective.

The land in controversy in the case of Northern Pacific Railroad Company v. De Lacey, 174 U. S. 622, 19 Sup. Ct. 791, 43 L. Ed. 1111, was within the primary limits of both the grant made by Congress to the Northern Pacific Railroad Company July 2, 1864 (chapter 217, 13 Stat. 365), and the grant made by the joint resolution of May 31, 1870 (16 Stat. 378). The grant in the act of July 2, 1864, was of—

"Every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile on each side of said railroad line as said company may adopt through the territories of the United States, and ten alternate sections of land per mile on each side of said railroad whenever it passes through any state and whenever on the line thereof the United States have full title, not reserved, sold, granted or otherwise appropriated and free from pre-emption or other claims or rights at the time the line of said road is definitely fixed, and the plat thereof filed in the office of the Commissioner of the General Land Office," etc.

In that case it was contended that the land there in question was excepted from both of those grants, because one John Flett had on the 9th day of April, 1869, filed in the local land office a statement declaring his intention to purchase the land under the laws of the United States authorizing the pre-emption of unoffered land, which claim remained uncanceled at the time of the definite location of the company's line of road. The Supreme Court held that inasmuch as that claim of Flett, filed on the 9th day of April, 1869, in the local land office, was alive at the time of the adoption of the resolution of May 31, 1870, the land was excepted from the operation of the grant contained in that resolution, and that inasmuch as the right of Flett, under whom De Lacey claimed, was a right of pre-emption only, which ceased at the expiration of 30 months from the filing of his statement on the 9th of April, 1869, in the local land office, because of the failure to make proof and payment within the time required by statute, there was no existing claim to the land at the time of the definite location of the company's line of road, which was March 26, 1884, and therefore the land passed to the company under the grant of July 2, 1864; but the court said:

"If there had been a pre-emption claim at the time of the passage of the act of 1864, the land would not have passed under that grant."

It is conceded by counsel for the appellant that, in the construction of the various land grant acts, the courts, as well as the Land Department, have held that a homestead filing is a "homestead claim,"

and that a pre-emption filing is a "pre-emption claim," and, further, that at the time the appellant's grant of July 25, 1866, was made, and its road was finally located, and at the time the homestead filings in the present cases were made, homestead claims were initiated by the filing thereof. In respect to the pre-emption filings in question, they appear to have been made upon "unoffered lands," in respect to which, as shown by the Supreme Court in the De Lacey Case (174 U. S. 628–632, 19 Sup. Ct. 791, 43 L. Ed. 1111), pre-emption claimants had at the time the appellant's definite location of its road became effective an uncertain and indefinite time within which to prove or complete their proof and payment. It results that, as the homestead and pre-emption claims in question were existing claims of record and uncanceled at the time the definite location of the appellant's road became effective, the lands in controversy were not "public lands," and therefore, under the well-established law upon the subject, its grant did not attach to them. Northern Pacific Railway Co. v. De Lacey, 174 U. S. 634, 19 Sup. Ct. 791, 43 L. Ed. 1111; Northern Pacific Railroad Company v. Sanders, 166 U. S. 620, 17 Sup. Ct. 671, 41 L. Ed. 1139; Whitney v. Taylor, 155 U. S. 85, 15 Sup. Ct. 796, 39 L. Ed. 906; Kansas Pacific Railroad Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122; Doolan v. Carr, 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. Ed. 844; Monroe Cattle Co. v. Becker, 147 U. S. 57, 13 Sup. Ct. 217, 37 L. Ed. 72; Leavenworth, etc., R. R. v. United States, 92 U. S. 733, 23 L. Ed. 634; Bardon v. Northern Pacific Railroad, 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806; United States v. Southern Pacific Railroad Co., 146 U. S. 570, 13 Sup. Ct. 152, 36 L. Ed. 1091.

In each case the judgment appealed from is affirmed.

MORROW, J., took no part in this decision.