EDNA M. PENROSE, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Supreme Court, Onondaga County, June 5, 1937.

*White & Shinaman*, for the defendant, for the motion.

*Melvin & Melvin*, for the plaintiff, opposed.

SMITH (E. N.), J.   On February 1, 1934, the defendant, through its district office at Schenectady, N. Y., issued to George Drake Penrose its accident policy, standard form, No. 984,084, whereby it insured said Penrose " against the results of bodily injuries sustained *while this policy is in force* and caused directly and independently of all other causes by violent and accidental means, to wit:— * * * For Loss of Life The Full Principal Sum Above Specified " ($5,000).

On the 4th of January, 1936, said George Drake Penrose met bis death, which was caused by an accident which was within the terms of the policy, and thereafter this plaintiff, widow of the insured and beneficiary, brought this action to recover under the policy the " Full Principal Sum " of $5,000.   The insurer denied liability, on the ground that at the time of the accident said policy was not in force.   The policy was for the term of six months from February 1, 1934.   It had been renewed from time to time and, under the last payment of the semi-annual premium of $11.18, would, without the payment of the renewal premium and without the consideration of the grace period, have expired at twelve o'clock noon on the 1st day of August, 1935.

The policy, under the heading " Renewal Grace," contains the following provision: " Clause 11.   This policy *may, with the consent of the Company, and subject to all of the terms, conditions and provisions of this policy, be periodically renewed upon each successive expiration, for a further period of equal number of months,* upon *the payment of the premium herein stated, as the premium for each such successive renewal.* * * * Upon each such renewal a *grace of thirty-one days*, without interest charge, shall be granted for the payment of the premium, during which period the insurance shall continue in force provided such payment is made within such period of grace." So that, under the period of grace, the insured had until twelve o'clock noon of September 1, 1935, in which to pay the renewal premium.   September 1, 1935, fell on a Sunday, and, under the General Construction Law, this day must be excluded from the

reckoning; September 2, 1935, was Monday, Labor Day, a public holiday, and, under said law, this must be excluded from the reckoning. Moreover, on both of these days the general agency or district office of the defendant at Schenectady, N. Y., was closed for business; it follows that the insured, under the grace period, had until twelve o'clock noon of the 3d of September, 1935, to make payment of the premium. (General Constr. Law, §§ 20, 25; *Page* v. *Shainwald*, 169 N. Y. 246.)

The plaintiff alleges that at about ten-thirty A. M. of September 3, 1935, at the office of the defendant in Schenectady, she went to pay the renewal premium and offered to pay the same, to wit, the sum of $11.18, which offer to pay was refused at the cashier's office on the ground that the payment was late and that the policy had expired because the renewal premium had not been paid in time. No other ground for the non-acceptance of the renewal premium was stated, and no other ground for such non-acceptance is claimed. That the offer of payment of renewal premium was made on the 3d day of September, 1935, was disputed by the defendant; the only question of fact for the determination of the jury was whether or not the offer of payment was made before twelve o'clock noon of the 3d day of September, 1935, and the jury was instructed that if it found as a fact that such tender was made, it should bring in a verdict in favor of the plaintiff for the full amount of the policy ($5,000), less the premium of $11.18, and the jury brought in a verdict in favor of the plaintiff and against the defendant for the sum of $4,988.82. The defendant moves to set aside the verdict and for a dismissal of the complaint.

That the tender of the renewal premium was made before twelve o'clock noon on the 3d of September, 1935, was sustained by a preponderance of the evidence, and if the jury on the evidence had otherwise found it would have been the duty of the court to have set aside the verdict as against the weight of the evidence. So that the sole question for the consideration of the court upon this motion is one of law, and is this: whether or not, upon the tender by the insured of the renewal premium and the refusal thereof by the insurer on the sole ground that the offer of payment was not made in time, there was effectuated a renewal of the policy for another period of six months, with the same force and effect as if the payment had been accepted and receipt issued therefor. If a renewal was effectuated, then the plaintiff is entitled to recover; if it was not, the motion to set aside the verdict and to dismiss the complaint should be granted.

It should be noted that, although the accident insurance policy is a policy of term insurance, no new policy is issued, but the pay-

ment of the renewal premium in time operates as a renewal of the policy for another period, according to the terms and conditions of the policy. This had been the course of dealing in this particular case; the payment of the renewal premium before the expiration of a term and the issuance of a premium receipt had operated to renew the policy for another term.

Under the standard provisions and under the heading "Past Due Premiums" is the following: "3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained." So that, under the terms of this provision, if the agency had accepted the premium, even if there had been a default, the policy would have been renewed. This being a term policy, without more than above appears, had the agency, without stating any reason whatsoever, refused to accept the renewal premium and to issue its receipt therefor on the 3d of September, 1935, the contract of insurance would have expired at twelve o'clock noon of said date. It was unnecessary to assign any reason. The policy, under the terms of the contract, continued in full force and effect until twelve o'clock noon September 3, 1935. The insurance company on that day could have refused to accept the premium and the coverage would have ceased at twelve o'clock noon of that day. Up to that time, and during the term, the company had only one way in which to cancel the policy, and that was by complying with the standard provision, No. 16, under the head of "Cancellation," which reads as follows: "16. The Company may cancel this policy at any time by written notice delivered to the insured or mailed to his last address, as shown by the records of the Company, together with cash or the Company's check for the unearned portion of the premium actually paid by the insured, and such cancellation shall be without prejudice to any claim originating prior thereto." The insurer had at no time prior to September 3, 1935, served any such notice of cancellation, nor had it served such notice after September 3, 1935, and prior to the date of the accident which caused the insured's death January 4, 1936. In other words, the insurer never canceled this policy, and its only position is that the policy expired by reason of the failure to pay the renewal premium in time.

Assuming that these were all the facts, did the offer to pay the renewal premium before the expiration of the term, in spite of the refusal to accept the payment on a ground which was false, to wit, that the offer to pay the renewal premium was not made in time,

operate as a renewal of the policy for another term, or until March 1, 1936? In this connection, it appears that the insured kept the renewal premium, $11.18, ready to pay the same whenever an agent might call, there being some evidence that the agent would call for a reinstatement of the policy. Now no reinstatement was necessary. The insurer had the right to refuse to renew the policy for another term, without stating any reason; but, having stated a false reason, to wit, that the offer of payment of the renewal premium was late and after the policy had expired, and there being no other reason or claimed reason shown, and apart from the erroneous assumption on the part of the agent that the policy had terminated, and it appearing that, aside from such erroneous assumption, the premium would have been accepted and the policy renewed, did, under such circumstances alone, the tender of the premium operate as a renewal of the policy? Ordinarily, one would say that the greater includes the less; that the right to refuse to renew the policy without any reason whatsoever being in the insurer, this right existed and continued, no matter if an agent authorized to receive the premium assigned a reason for not receiving the premium which was false.

Ordinarily a new contract, under these circumstances, would not be created by waiver. The insurance company was not obligated to continue the policy. It is not a case of forfeiture. The courts are jealous to guard against forfeiture.

Is it a case of estoppel, where a false reason for non-acceptance of the premium was asserted by the insurer whose agent apparently was ignorant of the law and in good faith, as probably was her duty, assuming the rule to be as she understood it, rejected the payment?

Upon the foregoing facts, could the insurer have recovered the premium, once it discovered its mistake, upon demand? It is doubtful. Undoubtedly, however, upon demand the insured would have paid the premium; he had the money ready to pay it.

While I am not certain about this, and the question is novel, I am constrained to the view that, this being a term policy and unlike regular policies of life insurance, and the company having the right to refuse to renew, without reason or for any reason, there could be no case of estoppel if by limitation of term the policy expired. The company might have determined that it would not write any more such insurance; it might have had an entirely different form of policy; it might have discontinued writing this form. Certainly, upon the existence of such circumstances, it would not be expected that a refusal to accept a premium, offered in time and rejected for any reason, would be subject to criticism or raise any question of a continuance of the policy by reason of a tender of payment of renewal premium refused.

But there were other facts in this particular case which must receive consideration. Prior to August 1, 1935, the defendant sent to the insured a premium notice which stated the number of the policy, the date the renewal premium would be due, the term of the policy and the amount of the premium. This premium notice contained the following statements:

(1) " Premium on the policy described below *will be due* in the amount and at the time stated, *if said policy be then in force.*"

(2) " Present this notice when paying premium at District Office, 431 State Street, Schenectady."

(3) " Make check, draft or money order payable to the Metropolitan Life Insurance Company."

(4) " Remittance made by check or draft is subject to the condition that such check or draft may be handled for collection in accordance with the practice of the collecting bank or banks, and that any receipt issued therefor shall be void unless the amount due is actually received by the Company."

On the reverse side of the premium notice there were the following statements:

(5) " Unless said premium is paid on or before said due date, or within a grace period of thirty-one days thereafter, the said policy will expire and cease to be in force or effect."

(6) " To be valid, payments must be made only in exchange for official renewal receipt, signed by the Secretary and countersigned by a duly authorized representative of the Company."

(7) " When remitting by check, draft or money order, make it payable to the Company, not to an individual. Please send this notice with payment."

(8) " Do not permit your policy to lapse if agent should fail to call. Remit premium to District Office or to Home Office, 1 Madison Avenue, New York City."

(9) " Be sure to give the number of your policy when writing, or when remitting premium."

Neither under the terms of the policy nor under the law of this State was there any duty on the part of the insurer to send this premium notice; it was a voluntary act on its part, in aid, no doubt, of assuring the renewal of the policy. Whether or not this notice operated as a waiver of the right of cancellation by written notice, as reserved in paragraph 16 of standard provisions above quoted, it is unnecessary here to determine, for the reason that that question is not here, because the insurer sent to the insured no notice of cancellation. As above shown, the contract of insurance continued in effect until twelve o'clock noon September 3, 1935.

The statement in the foregoing premium notice that the premium on the policy " will be due " at the time stated, which of course includes the grace days, " if said policy be then in force," clearly showed that there was an assurance that the policy would be renewed, and constituted an offer to renew the policy if the renewal premium was paid while the policy was still in force. There was no withdrawal of the offer, and there was acceptance of the offer by the insured by paying or offering to pay the renewal premium while the policy was still in force. The fact that the insurer intended to make the offer to renew the policy is shown not only by the above-quoted statement but by other statements upon the premium notice. There was notice to the effect that the policy would expire and cease to be in force unless the premium was paid on or before the due date or within the grace period thereafter; there was notice to the insured not to let his policy lapse if an agent should fail to call — showing the clear intent and purpose on the part of the insurer to continue the contract upon the payment of the renewal premium. But more significant than this is the statement upon the premium notice that the premium " will be due." This has no meaning unless there was a purpose on the part of the insurer, upon payment of the premium in time, to continue the policy. The offer to renew is explicit and definite. If the policy was not to be continued upon the payment of the renewal premium, there would be no premium due. There was a clear and definite offer to renew the policy provided the premium for such renewal was paid in time, and a definite acceptance of the offer. In any other sort of business transaction such an offer and an acceptance thereof would constitute a contract binding upon both parties. Here, this policy and this premium notice was prepared by the insurer, and under such circumstances, according to the rules of construction, they should be construed most strongly against the party preparing the contract where there is doubt as to the language thereof. Suppose, under these circumstances, the insured met with an accident at twelve-one P. M., September 3, 1935, of a type that was covered by the terms of the policy; did he not have a right to rely upon the continuance of the policy if the premium were paid? His purpose in carrying the policy was to have security against such an eventuality, for the protection, in this case, of his widow. Did he not have a right to rely, after receiving this notice, upon his policy being in full force and effect when there were no intervening reasons why it should not be renewed? In this instance the renewal premium was tendered at the district office of the insurer by the insured's wife. She says she thereafter kept the money available for the call of the agent whose name was written by the district

office upon the face of the premium notice. Had this premium notice not been sent, with its offer to renew, other questions might have arisen which it is unnecessary here to pass upon, questions of practice, of custom, in the business of accident insurance, where, as is a matter of common knowledge, in the absence of unusual circumstances, such policies are renewed as a matter of course upon the payment of premium prior to the expiration of the terms thereof. These questions are not here, for the reason that there is no occasion to resort to implication in the presence of the positive offer to renew, if accepted in time. No doubt, immediately after the renewal, this company would have had the right of cancellation, as provided in said paragraph 16. No notice of cancellation, as provided in said section, was ever sent, and no notation of cancellation or lapse was ever entered upon the books of the company. The insured continued in possession of the policy uncanceled. His offer to pay the renewal premium was rejected upon a ground that had no foundation whatsoever; he owed no duty to do anything more than to rest upon his rights; the company was bound by its contract of offer to renew and the acceptance of the offer by the insured.

In my opinion, the policy, under the circumstances, was in full force and effect until the 1st of February, 1936, plus thirty-one days of grace thereafter.

The motion to set aside the verdict and to dismiss the complaint is, therefore, denied.

Ordered accordingly.