William **FRIEDMAN**, Appellant,

v.

**GROUP HOSPITALIZATION**, Inc., et al., Appellees.

No. 12418.

United States Court of Appeals, District of Columbia Circuit.

Argued March 15, 1955.

Decided March 31, 1955.

Mr. Isaac N. Groner, Washington, D. C., for appellant.

Mr. Jo V. Morgan, Jr., Washington, D. C., with whom Messrs. John J. Carmody, Warren E. Magee and Daniel J. Andersen, Washington, D. C., were on the brief, for appellees.

Before EDGERTON, PRETTYMAN and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant (plaintiff) seeks to reverse a judgment of the District Court rendered in favor of the appellees (defendants) on a motion for summary judgment.

■ The following facts appear from the proceedings before the District Court: On June 1, 1947, plaintiff obtained from defendant, Group Hospitalization, Inc., a family participant policy under a group franchise covering hospital benefits. On December 1, 1948, this policy was enlarged by the payment of an additional premium to cover surgical fees by defendant, Medical Services of the District of Columbia. The policy contained, among other things, the following provisions as to payment of premiums:

"11. * * * a. Payable in Advance—All Subscription Charges shall be due and payable in advance, the initial charge prior to the Effective Date of this Contract.

* * * * * *

"d. Grace Period—A grace period of one calendar month shall be allowed within which the Subscriber may pay Subscription Charges, except the initial charge.

* * * * * *

"12. * * * a. By Default in Payment of Charges—Upon default in payment of charges for this Contract in accordance with the terms hereof, this Contract shall automatically terminate without notice at the end of the grace period provided herein, and a Participant shall not thereafter be entitled to any further benefits hereunder."

Plaintiff avers that on May 29, 1953, he mailed a check for the May premium by United States mail, postage prepaid. This check was not received by the defendants until 3:47 P. M. on June 1, 1953. It is to be noted that May 30, the day the check would normally have been received, was a legal holiday and that May 31 fell on Sunday. It is to be noted also that the office of the defendants was not open on those days, May 30 and May 31. Defendants refused to accept the check, claiming that it was received too late, and returned it uncashed on June 4, 1953, with the advice that the contract had been cancelled because of non-payment.

Thereafter, on June 5, 1953, plaintiff became disabled and remained continuously and totally disabled for 102 days, and was under the professional care of participating physicians and surgeons. Defendants have refused to pay for those services.

Defendants contend that they are not liable because, they say, the contract was not in force at the time the illness occurred, due to the cancellation of the policy for non-payment of premium during the grace period.

We are faced with a problem which, in its final analysis, is this: Are we to shorten the grace period of the policy by two days, see Penn. Mut. Life Ins. Co. of Philadelphia v. Miller, 2 Cir., 16 F.2d 13, note 3, infra, due to the unusual situation of the month ending in a holiday and a Sunday? Expressing it otherwise, the question is whether the payment of the premium in the manner above described was a valid payment when a grace period of one month is provided and when the last two days of the month fall on (a) a legal holiday and (b) a Sunday, and when the check, mailed well

within the grace period, is received by the insurer on the next following business day.

The precise question posed in this case has been before the courts of several states but, so far as we have been able to ascertain, it has never arisen in the District of Columbia.[1]

The courts in the states passing upon the question have reached different conclusions. Illinois and possibly California (although the latter certainly only by way of dictum) seem to follow the strict and, to our minds, harsh rule that payment must be *received* on or prior to the last day of maturity, whether or not that day is a Sunday or holiday.[2] Tennessee, New York, South Carolina, Kansas, Massachusetts, Kentucky and New Jersey follow the rule, more reasonable to our minds, namely, that when the grace period ends on a Sunday the policy holder is entitled to pay the premium on the following Monday, provided that is a business day.[3] We prefer to and do follow the latter rule.

█ We are not impressed with the argument that there was accord and satisfaction in this case. This argument is based on the ground that, when the check covering the premium was returned, plaintiff was sent and thereafter filed an application for reinstatement, which provided among other things a waiting period for pre-existing conditions. There were no elements of accord present, and there is nothing in the motion for summary judgment to indicate that this application was made by plaintiff and accepted by defendants in order to settle the controversy. It is clear to us that, at least as the record now stands, all indications are to the contrary.

Reversed.

---

1. While the matter of payment of insurance premium, under circumstances similar to this case, has not been before the courts of the District of Columbia, both the Supreme Court and this court have had occasion to consider closely allied questions. In Street v. United States, 133 U.S. 299, 306, 10 S.Ct. 309, 311, 33 L.Ed. 631, 634, the Court said: " * * * it must be noticed that the 1st day of January was Sunday,—that is, a *dies non;* and a power that may be exercised up to and including a given day of the month may generally, when that day happens to be Sunday, be exercised on the succeeding day."

See also Monroe Cattle Co. v. Becker, 147 U.S. 47, 55, 13 S.Ct. 217, 220, 37 L. Ed. 72, 76, where the Court said: "As the ninetieth day fell on Sunday, the lands were not open to another application until Monday; the general rule being that, when an act is to be performed within a certain number of days, and the last day falls on Sunday, the person charged with the performance of the act has the following day to comply with his obligation."

See also Sherwood Bros. v. District of Columbia, 72 App.D.C. 155, 156, 113 F.2d 162, 163, where the court said: "Business practice and accepted legal principle, apart from statute, permit and in some instances require an act to be done on the following Monday where the last day upon which it should have been done falls on Sunday. That is the common-law rule, and it has become embedded in the habits and customs of the community, both from respect for religious considerations and by long-established legal and commercial tradition."

See also Lamson v. Andrews, 40 App.D. C. 39; Union National Bank of Wichita, Kan. v. Lamb, 337 U.S. 38, 69 S.Ct. 911, 93 L.Ed. 1190, petition for rehearing and, alternatively, for modification of opinion denied 337 U.S. 928, 69 S.Ct. 1492, 93 L.Ed. 1736.

2. Hixenbaugh v. Union Central Life Ins. Co., 219 Ill.App. 534; Upton v. Travelers' Ins. Co., 179 Cal. 727, 178 P. 851, 2 A.L.R. 1597.

3. Simpkins v. Business Men's Assur. Co. of America, 31 Tenn.App. 306, 215 S.W.2d 1; Campbell v. International Life Assur. Society of London, 4 Bosw., N.Y., 298; Penrose v. Metropolitan Life Ins. Co., 163 Misc. 241, 296 N.Y.S. 764; Eachus v. New York Life Ins. Co., 193 Misc. 945, 85 N.Y.S.2d 553; Linfors v. Unity Life Ins. Co., 189 S.C. 527, 1 S.E.2d 781; Lightner v. Prudential Ins. Co. of America, 97 Kan. 97, 154 P. 227; Hammond v. American Mut. Life Ins. Co., 10 Gray, Mass., 306: cf. Kilgour v. Miles, 6 Gill. & J., Md., 268.

See Bohles v. Prudential Ins. Co. of America, 84 N.J.L. 315, 86 A. 438, in which the court held that, where the policy provided a grace period of one month, the word "month" meant a calen-

dar month; that, since the premium was due June 30th, the month of July was the period of grace to which the insured was entitled; and, therefore, the last day of grace was July 31st, which was a Sunday. The court held that the insurance company afforded no opportunity to pay on that day and the insured was therefore entitled to pay the premium on the first day thereafter upon which business could be lawfully transacted, which was Monday, August 1st. The court stated that to so hold would put the case in accord with the great weight of authority.

Also, Owen v. Howard Ins. Co., 87 Ky. 571, 10 S.W. 119, where the court held that, when the last day of the time within which an action could be maintained on a policy of fire insurance fell on Sunday, suit could be brought on the day following. The court found the earlier case of National Mut. Benefit Ass'n v. Miller, 85 Ky. 88, 2 S.W. 900, in harmony with its decision, as in Miller the company's office was open on a holiday, as it had a right to be, for the transaction of its business.

See also Penn Mut. Life Ins. Co. of Philadelphia v. Miller, 2 Cir., 16 F.2d 13, 15, where the court said: "Although denominated days of grace, the 31-day period is in no sense a matter of grace. It is just as much an essential part of the contractual terms as the nonforfeiture provision applicable after three years' premiums have been paid. It amounts to an agreement to carry the risk during the extended time in consideration of the premiums theretofore paid, and in the hope and with the incentive that, if the policy does not mature in the meantime, the premiums will be kept up. We see no reason for so construing this clause as to shorten this contractual period to 30 days, if the thirty-first day is on a Sunday; the language is chosen by the insurer; if it desired to shorten the period in such an event it could have provided therefor by express words." The court, in Penn Mut. Life Ins. Co. of Philadelphia v. Miller, criticizes the Hixenbaugh case, supra, and calls attention to the fact that the case therein relied upon, Aetna Life Ins. Co. of Hartford, Conn. v. Wimberly, 102 Tex. 46, 112 S.W. 1038, 23 L.R.A.,N.S., 759, seems rather to support the conclusion of the Penn Mut. case.

While several of the cases referred to in this note would seem to be based upon Sunday statutes, these are shown by the decisions to be merely declaratory of the common law. They seem to recognize the reasoning of the language in Sherwood Bros. quoted above.